## Bredin *against* Dwen.

*Assumpsit,* debt, detinue or account-render may be maintained against a trustee named in a will, to compel an account of his receipts and expenditures.

After a judgment *quod computet* in an action of account-render, an objection to the plaintiff's disability comes too late.

A stranger may not recover the price of goods sold to a ward against the injunctions of the guardian: and in an action for the same, the guardian is a competent witness.

ERROR to *Cumberland* county.

This was an action of account-render by John Dwen and Elizabeth his wife, late Elizabeth Hagan, against James Bredin.

The declaration charged, " that the said James Bredin render them, the said John Dwen and Elizabeth his wife, (which said Elizabeth is a daughter and legatee of the late Thomas Hagan deceased) a reasonable account for the time in which the said James was bailiff and receiver of the money of them, the said John and Elizabeth his wife, as executor of the last will and testament of the said Thomas Hagan deceased, and for, or by, reason of any trust under said will, or from any cause or contract whatever arising to the use and benefit of them, the said John Dwen and Elizabeth his wife." ·

The declaration charges the defendant, as executor of Thomas Hagan's will, with having received divers goods, chattels, &c. of the plaintiff, which were bequeathed to her by the said will, and the issues and profits arising therefrom, from the 7th of June 1821, till suit brought, without having rendered an account, &c. And also, as trustee of the real estate of the said Thomas Hagan deceased, which was devised to the said James Bredin, in trust and for the use of the said Elizabeth, and with the rents and profits thereof, &c. &c.

On rules to plead, a judgment by default was rendered against the defendant on the 23d of August 1830; and on the 18th of April 1831, auditors were appointed, who met several times. The last time they met the following agreement was entered into:

" And now, to wit March 16th 1832, the auditors having met, it is agreed that the accounts and matters in controversy between the parties shall be tried in the court of common pleas, as if issues had been regularly joined by the auditors in this case, to try the same by

the said auditors, the said issues to be tried, without being formally joined, as if the same had been regularly joined; the same to be tried by the court and jury, and subject to a writ of error and all other proceedings as if this were an adversary proceeding, the death of John Dwen being first suggested."

21st January 1833, a jury being in the box, the defendant's counsel moved the court to open the judgment *quod computet,* so as to let the parties into an investigation of the whole matter of liability, which was objected to by the plaintiff: and the court overruled the motion.

The plaintiff then gave in evidence the will of Thomas Hagan deceased, as follows:

"It is my will, and I do hereby order and direct my executors hereinafter named, as soon as convenient after my decease, to make an inventory of all my household furniture and other personal chattels which shall come to their knowledge, and to convert the same into money or active funds, either by public vendue or private sale as they shall deem most suitable and advantageous. It is likewise my will, and I do hereby direct, that the sums due me by bonds, note, book account, judgment, or otherwise howsoever, be collected or secured by my executors as soon after my decease as practicable. Out of the funds arising out of these sources, my executors will pay all my just debts and funeral expenses, and will appropriate the balance in the following manner, to wit, the one equal half part thereof to be paid over into the hands of the guardian of my daughter Elizabeth, to be put out on interest, and the interest arising therefrom to be appropriated towards the support and maintenance of my said daughter Elizabeth for and during her natural life; and after her decease, it is my will, and I do order and direct, that the money be appropriated and distributed in the same manner and for the like uses as is directed to be done with my real estate hereinafter given and bequeathed; and the other equal half part thereof I do give and bequeath to my sister Bridget, wife of Barney Carney, to be at her own disposal. And further, it is my will, and I do hereby order and direct, that the interest arising from my bank stock and turnpike stock be paid over to my said daughter Elizabeth and my said sister Bridget in equal parts, for and towards their maintenance during their natural lives; and after the decease of my said daughter Elizabeth and my sister Bridget, it is my will, and I do order and direct, that the said stock be appropriated and distributed in the same manner and for the like uses as is directed to be done with my real estate hereinafter given and bequeathed. Further, it is my will, and I do hereby order and direct that all the lands and tenements and real estate whereof I may die seised, shall be valued by three judicious persons to be appointed by the orphan's court of the county aforesaid, and shall by them be divided into two equal parts or moieties, which I hereby devise in the following manner: one of the said parts or moieties (to be first chosen by the guardian of my daugh-

[Bredin v. Dwen.]

ter Elizabeth) I give and devise unto James Bredin, Andrew Blair and Robert Irvine, the survivors or survivor of them, and the heirs of such survivor, to and for the uses and purposes, upon the trusts, and under and subject to the provisions, limitations and directions hereinafter contained and expressed, viz. in trust to lease the same from year to year to the best advantage, to receive the rents, issues and profits arising from the same, and to pay the said yearly rents, issues and profits into the hands of the guardian of my daughter Elizabeth to be appropriated by him to her maintenance, education and support, for and during her natural life, and· in the event that my said daughter Elizabeth should marry, and have issue of her body lawfully begotten, and die leaving issue as aforesaid, then upon the further trust to sell and dispose of the said moiety, and to divide the moneys arising from said sale to and amongst her children and heirs at law. But in case my said daughter Elizabeth shall die without issue as aforesaid during the lifetime of my sister Bridget, wife of Barney Carney, then the aforesaid trustees shall pay the rents, issues and profits of said moiety into the hands of the said Bridget, wife of Barney Carney, whose receipt shall be their sufficient voucher for the payment of the same; and in case my daughter Elizabeth should die without issue as aforesaid, after the death of my said sister Bridget, then the trustees aforesaid shall either divide the rents, issues and profits of the aforesaid moiety to and amongst the children and heirs at law of the said Bridget, or shall sell the same and distribute the proceeds of said sale among the same in equal parts and proportions as they in their discretion shall judge most advisable. The other part or remaining moiety I give and devise unto James Bredin, Andrew Blair and Robert Irvine, the survivors or survivor of them and the heirs of such survivor, to and for the uses and purposes, upon the trusts, and under and subject to the provisions, limitations and directions hereinafter contained and expressed, viz. in trust to lease the same from year to year, and to receive the rents, issues and profits arising therefrom, and to pay the same into the hands of my sister Bridget, wife of Barney Carney, whose receipt for the same shall be to them a sufficient voucher for the payment thereof, yearly and every year for and during the natural life of the said Bridget, and also upon the further trust to pay over the said rents, issues and profits, upon the death of the said Bridget, to such person or persons, or for such uses as she shall direct and appoint by her last will and testament; and further, in case the said Bridget shall not make such appointment in the nature of a will, then upon the further trust, either to divide the rents, issues and profits thereof to and among her children and heirs at law, or to sell the same and make an equal distribution among the children and heirs aforesaid of the moneys arising from the sale thereof, as my said trustees in their discretion judge to be most suitable and advantageous. I nominate and appoint Andrew Blair to be the

II.—N

[Bredin v. Dwen.]

guardian of the person and estate of my daughter Elizabeth, indul-ging a confident persuasion that he will scrupulously attend to the formation of her moral character, and the preservation of her temporal interests. It is my wish and direction, that as soon as arrangements can be made, she be sent to complete her education in the sisterhood of St Joseph's, or to any other Catholic seminary. Lastly, I do nominate, constitute and appoint James Bredin, Andrew Blair and Robert Irvine to be the executors of this my last will and testament, hereby revoking all wills by me heretofore made, and declaring this and no other to be my last will and testament. In witness whereof, I have hereunto set my hand and seal, this 16th day of April, in the year of our Lord 1821."

December 12, 1823, at the request of Elizabeth Hagan to the orphan's court, Mr Blair was discharged from his guardianship, and John D. Mahon, esquire, was appointed.

April 8, 1824, J. D. Mahon declined to accept, and on the 12th of May 1824 Rev. Patrick Dwen was appointed.

On the 23d of September 1822, on the petition of James Bredin and Robert Irvine, appraisers of the real estate were appointed, who reported on the 13th February 1823, and on the 8th of September 1824 an election for Elizabeth was made by Patrick Dwen.

On the 24th of August 1824, James Bredin and Robert Irvine settled an administration account, which was confirmed by the supreme court the 31st of October 1826. Balance in the hands of accountants 823 dollars 64 cents.

This account the plaintiffs offered in evidence, and it was objected by defendants:

1. That the items which are the subject of settlement in this account, are embraced in the will read, and are bequeathed to Andrew Blair as a trustee, for the life of said Elizabeth, to pay over the interest, &c. at his discretion, and that she has no right, in her own name, to receive or recover from the defendant any portion of the fund now referred to.

2. That a remedy is provided by act of assembly in this and all similar cases, which is exclusive, and that so far as regards the matters now in controversy account-render will not lie.

These objections were overruled, and the evidence given to which the defendant excepted.

A witness was then called, to establish the liability of James Bredin for certain moneys of the estate.

The defendant "objected to any evidence going to show that James Bredin became liable, *as executor*, to the payment of any money or in that capacity received any funds of the testator, after the resignation and dismission of Robert Irvine, the co-executor; that he, by that act, became *functus officio;* and that this suit can only be sustained on contract or privity of the parties; and also, that the funds received as executor, were jointly received and accounted for,

[Bredin v. Dwen.]

and that afterwards James Bredin is not singly liable ; and that as to the fund referred to by the witness, he is only charged in the declaration as executor, not as trustee."

The objection was overruled, and exception taken by the defendant.

The substance of the evidence was, that Mr Bredin had received moneys of the estate of Thomas Hagan, with which he was not charged in the administration account settled, and other moneys which he should have received, and was therefore chargeable with them in this action.

The plaintiff then offered the trustee account of James Bredin from the 16th of July 1821 till the 1st of April 1825.  Objected to by defendants, for the reasons given for objecting to the administration account, and also because there was no division of the property between Elizabeth Hagan and Bridget Carney, till after the account was settled ; and that this is a separate account of the whole estate by one of two joint trustees, and does not purport to be an account of the trust, in reference to the plaintiff in this suit ; also, that the trustee under the will of Thomas Hagan was in the performance of his duty during the period of this account, and he only could sue. Plaintiffs only claim one half the amount.

Objections overruled, and exception by defendant.

The account was then read to the jury.

The plaintiffs then gave in evidence leases between James Bredin and various named tenants, from 1823 to 1833 inclusive, and also the bank books, to show the dividends declared on the stock, from the settlement of the trustee account up till suit brought.

The plaintiff also gave in evidence what was the amount of the proceeds of lots from 1825 to 1833.

Robert Irvine was then called, who said that the balance of the administration account was in the hands of Bredin, and not in his ; that he was an acting executor and trustee, up to the time he filed his accounts, but had done nothing since.

Robert Irvine's trustee account was then given in evidence, passed 27th of February 1826.

The defendants then gave in evidence the guardianship account of Andrew Blair, guardian of Elizabeth Hagan, passed 9th of December 1823.  Debit side of account, 717 dollars and 33 cents, received from James Bredin and Robert Irvine at different times ; credit side,        dollars.

Book account for repairs done to property by James Bredin, and goods furnished to Elizabeth Hagan, and money paid to her, and for her boarding, washing and lodging, from the 5th of November 1823 till the 2d of January 1829, 1985 dollars and 12 cents.

The plaintiff then examined several witnesses, to prove that the items of James Bredin's account were extravagant ; and several witnesses were examined by the defendant also, on the same subject.

The plaintiff then called the Rev. Patrick Dwen, whose testi-

mony was objected to by the defendant, on the ground that he is the guardian of the plaintiff; that he received part of the moneys, the subject now in controversy, and is interested in the event of the suit. (It had appeared in evidence, that he had received from Mr Bredin 200 dollars.)

The plaintiff stated the object to be, to prove, that shortly after the witness was appointed guardian, he notified Bredin not to pay over, or allow advances to Elizabeth, without his order ; and also to prove the date of her marriage.

Objection overruled, and exception by defendant.

The Rev. Patrick Dwen was then sworn, and gave the evidence offered.

The court was respectfully requested by the defendant's counsel to charge the jury upon the following points, and to file their charge ;

1. That the orphan's court has exclusive jurisdiction over the accounts of executors, administrators, guardians and trustees appointed by will ; that the settlement of such accounts cannot be compelled in Pennsylvania by any common law action ; and that these principles are applicable to the facts of this case, and should prevent the recovery of the plaintiff.

2. If the first point should be answered in the negative, then, that the legal interpretation of the will of Thomas Hagan will not admit of a recovery by the plaintiff of any thing but the interest which accrued annually upon the bank stock, all other bequests being to a trustee, who alone could maintain an action therefor.

3. If the first and second points are answered in the negative, then, that the plaintiff is not entitled to recover any part of the personal estate of Thomas Hagan, but only the annual interest upon the one half of the balance thereof, after the payment of debts.

4. That the powers and duties of the trustee, created by the will of Thomas Hagan, over the person and estate of Elizabeth Hagan, is still subsisting ; the orphan's court having had no power to accept of his resignation, he alone, therefore, could maintain this action, if it can be maintained at all.

5. If the orphan's court had jurisdiction of the subject, then the appointment of another trustee or guardian in the room of Andrew Blair, clothed him with the power to maintain this action, and he alone could legally receive the moneys claimed in this suit.

The plaintiff's counsel requested the court to charge the jury :

1. That the plaintiff is entitled to recover the amount of the one half of the balance of the personal estate of T. Hagan deceased, to be put out at interest under the will.

2. That if the jury believe that after the Rev. Mr Dwen was appointed, he gave notice to Mr Bredin not to let Elizabeth Hagan have goods out of his store, or make advances to her without an order from him, and that he remonstrated against his giving her goods; and Mr Bredin replied that Mr Dwen's office as guardian

was merely nominal, and he, Mr Bredin, disregarded his notice—if the jury believe these facts in law, Mr Bredin cannot recover on account of his bill for store goods one cent, nor will the law allow him any thing on that account, and the jury cannot, if they believe these facts and circumstances, allow him on this account more than the plaintiff is now willing to allow him, to wit 50 dollars per year.

*By the Court.* 1st point. This point is answered in the negative, on the ground that similar suits have been sustained in Pennsylvania, and by one of the judges this action is recommended as a suitable remedy.

2d point. Upon the resignation of Andrew Blair in 1824, there was no power in the court to supply his place, if he be considered in the character of a trustee for the life of the plaintiff, under the will of testator; and to prevent the failure of the trust, the interest under the will vested in the plaintiff as her guardian, appointed by the orphan's court; and having so vested, it could not afterwards be divested, under the law of 1825 or 1828, by the appointment of a trustee. She having come of age, may maintain this action in her own name; but she can only recover the annual interest and proceeds willed to her, and not the fund itself. It is not necessary to vest the whole fund in her to give effect to the will, and to effectuate the object of the trust. There was only vested in her the beneficial interest granted to her by the will. If necessary to give effect to the trust, the court has power *now* to appoint a trustee.

3d point. Answered in the affirmative as above stated.

4th point. Answered in the negative.

5th point. Answered in the negative.

Second point of the plaintiff answered in the affirmative.

To this charge the defendants excepted.

The several bills of exception were the subject of the errors assigned.

*Watts* and *Williamson,* for plaintiff in error.

*Biddle* and *Penrose,* for defendant in error.

PER CURIAM.—An action of *assumpsit,* debt, detinue or account-render, as the case may require, is expressly given by the act of 1772, for any legacy or bequest of money, goods or chattels: and if this be not a proper case for account-render, the defendant having been the receiver of the effects charged in the declaration, one can hardly be imagined. The action being proper, the judgment in it precludes all the questions but two that have been attempted to be raised out of it. It is immaterial whether the plaintiff or her trustee be the party originally entitled. After judgment that the defendant account, a plea or objection to the plaintiff's disability comes too late.

[Bredin v. Dwen.]

The open questions are, the competency of the guardian as a witness, and the direction of the court as to the effect of his testimony. Not a spark of interest has been shown in him ; and the direction was perfectly proper. To determine that a stranger may recover the price of goods furnished to a ward against the injunctions of the guardian, would be to uproot the foundations of society. Nothing would justify such an interference, but a case of extreme necessity, founded on a neglect of the guardian's duty ; the proof of which, however, rests on the claimant of compensation. No such case is shown here ; and of all the parties implicated, the plaintiff in error has least room for complaint.

Judgment affirmed.