501 A.2d 1359

**ANTIGUA CONDOMINIUM ASSOCIATION, et al.,**

v.

**MELBA INVESTORS ATLANTIC, INC., et al.**

No. 364, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Jan. 9, 1986.

728

Barry L. Steelman and Kevin Thornton (Sidney Kaplan and Kaplan, Kaplan & Steelman, on brief), Baltimore, for appellants.

Judith D. O'Neill and Steven M. Caplan (Weinberg & Green, Jonathan Claiborne and Whiteford, Taylor, Preston, Trimble & Johnston, on brief), Baltimore, for appellees.

Argued before WILNER, BISHOP and BLOOM, JJ.

BLOOM, Judge.

This appeal reaches us after four years of unsuccessful attempts to get past the pleading stage, the defendants below having successfully interposed demurrers to the plaintiffs' declaration and various amendments thereto. A demurrer to the Second Amended Declaration was sustained without leave to amend as to one defendant because the court concluded that no cause of action had been or could be stated as to it. The remaining defendant's demurrer to the "Revised Second Amended Declaration" (translation: fourth attempt) was sustained without leave to amend because the court concluded that all claims were barred by the statutes of limitations. We find that some claims for breach of contract were not barred by limitations, and we will reverse the judgments as to them, while affirming the judgments on all other claims.

### BACKGROUND

There are eighty-four appellants in this case—Antigua Condominium Association, which is a council of condominium unit owners (the Council) and the owners of forty-five individual condominium units. There are two appellees— Melba Investors Atlantic, Incorporated (Melba), and Bankers Trust Company, Incorporated (Bankers Trust).

The Antigua Condominium is one of many condominium complexes recently built in Ocean City. Construction on the condominium was started sometime in 1973 by the 85th Street Development Corporation (85th Street). Bankers Trust, a New York banking corporation, extended construction financing to 85th Street in 1973. By 1976, 85th Street was in default on the mortgage and lawsuits were pending. To avoid foreclosure, 85th Street conveyed Antigua Condominium to Bankers Trust in consideration of which Bankers Trust cancelled 85th Street's mortgage debt, which had a balance of about $5,500,000 at the time of this transfer. The condominium constituted all of the assets of 85th Street.

Bankers Trust, because of banking restrictions and regulations, could not hold title to or develop Antigua Condominium, so it caused 85th Street to convey the property directly to appellee Melba, a wholly owned subsidiary of Bankers Trust, previously created to engage in the business of developing real estate. Melba paid no consideration for the property but channelled to Bankers Trust all the funds it received through the sale of condominium units.

After acquiring the property, Melba continued construction of the condominium, completing it in 1977 when the first units were offered for sale. The first two units were conveyed by Melba by deeds dated September 17, 1977, one to Mr. and Mrs. Sanford Daily and the other to Mr. and Mrs. John Dolan. Both couples are among the appellants in this case. Sales by Melba continued through June 1, 1979, when it conveyed a unit to Mr. and Mrs. Dewey Jordan, who

are also appellants. Each contract of sale by Melba is alleged to contain the following provision:

[The unit is sold "as is"] except as follows: Seller will make any necessary repairs, adjustments, or replacements to the condominium unit and item of personal property specified herein or the common elements of the condominium required as the result of faulty construction, faulty materials, faulty manufacture, or faulty installation, provided that notice of the defect shall be given Seller within a period of one (1) year accounting from the date of settlement under this Contract.

According to appellants, problems developed throughout the condominium, both in individual units and in the common elements. Some of the more obvious problems were: water leakage due to faulty exterior waterproofing and poor door and window seals; inadequate insulation; and malfunctioning heating and air conditioning units. Many more major and minor defects were asserted. The pleadings alleged that the Council gave notice to Melba and to Bankers Trust of the defects "within the first year of occupancy," i.e., within a year of September 17, 1977. The pleadings also alleged that the individual unit owners gave notice "within the time prescribed" by the contract.

Melba apparently undertook repairs soon after the first sale and continued repairs, both new and old, until May of 1980. The Council and the individual unit owners were unhappy with the repair work and were not assured by Melba's attitude about continuing to make repairs. The Council finally sent Melba a letter in April of 1980 listing all defects, complaining about the work that was being done, and demanding additional work. Melba responded with a letter dated May 6, 1980, in which it stated that it had responded in every way to all of its responsibilities and that it had already extended itself far beyond its legal obligations.

Appellants finally brought suit against Melba and Bankers Trust in the Circuit Court for Baltimore City in Septem-

ber of 1981. Since the problems in the case reside in the pleadings, it is necessary to trace the various documents that were filed. On September 24, 1981, appellants—both the Council and the individual unit owners—filed a Bill of Complaint for both equitable relief and damages at law. Defendants raised preliminary objections, which were overruled, and the Circuit Court for Baltimore City merged the counts at law from the bill of complaint with a law case known as *Antigua Condominium Association v. Melba Investors Atlantic, Inc.* Likewise, the equitable claims raised in *Antigua Condo. Ass'n v. Melba Inv. Atlantic, Inc.* were merged into the equity case which was known as *Balin, et al. v. Melba Inv. Atlantic, Inc.* These cases were later consolidated as *Antigua Condo. Ass'n v. Melba Inv. Atlantic, Inc.*

Appellants filed an Amended Declaration on February 16, 1983. This declaration, as the two revised versions that followed it, contained ninety-four counts. The first count contained most of the factual allegations and prayed for damages on behalf of the Council for breach of contract. The second count sought damages for the Council for breach of express and implied warranties. In the third count, the unit owners as a group sued for damages for breach of contract. The unit owners sued for breach of express and implied warranties in the fourth count. In counts five through ninety-four, the owners of individual units sued for breach of contract in one count and breach of express and implied warranties in the next count, alleging various defects for each unit. Melba and Bankers Trust each filed demurrers, supplemented by memoranda, on September 1, 1983, demurring to all ninety-four counts of the declaration. The demurrers were sustained as to almost all counts, and appellants were given thirty days to amend. A Second Amended Declaration was filed on February 14, 1984, and appellees again demurred. Bankers Trust demurred on the grounds that there was no contractual relationship between it and appellants, that it had made no warranties, and that none of the facts alleged supported a

cause of action against it; its demurrer was sustained without leave to amend.

Appellants then filed a "Revised Second Amended Declaration" on December 3, 1984. We note that the new Maryland Rules went into effect on July 1, 1984, which is of some significance to appellants' arguments. Melba filed a motion ne recipiatur and another demurrer to all ninety-four counts. This last demurrer was sustained without leave to amend, and this appeal was then taken.

The focus of the final demurrer and the order sustaining it was on the statute of limitations. The court below ruled that the statute of limitations had run on all of appellants' claims prior to the filing of the original bill of complaint and that this defect was apparent on the face of the pleadings. The court also found that Melba's letter of May 6, 1980, did not amount to an express unconditional promise which, under *Potterton v. Ryland Group, Inc.*, 289 Md. 371, 424 A.2d 761 (1981), would toll the statute of limitations.

There are eleven issues raised in appellants' brief and six more addressed in their reply brief. For simplicity, we have reorganized the arguments and discuss the following issues:

   I. Was suit properly brought against Bankers Trust Company?

  II. May a demurrer (now a motion to dismiss) be used to raise the defense of the statute of limitations?

 III. Are appellants' claims barred by the statute of limitations?

     A. Claims of the council of unit owners

     B. Claims of the individual unit owners

     C. Does the "discovery rule" apply to toll the statutes of limitations?

     D. Did Melba's letter of May 6, 1980, constitute a *Potterton* promise?

     E. Were the statutes of limitations tolled under the principles of the "repair doctrine" or equitable estoppel?

F. Were the warranty and limitations periods extended by Melba's failure to file Articles of Transfer upon receiving the deed from 85th Street?

## I. THE CLAIM AGAINST BANKERS TRUST

We first address appellants' claim against Bankers Trust. Bankers Trust is a New York corporation having its principal place of business in New York City; it is engaged in business in Maryland. This was alleged by appellants in each of their four declarations. Appellants further alleged that Bankers Trust is the true party in interest, that it had absolute control over Melba and that Melba is essentially the alter ego of Bankers Trust.

Appellants urge, both in their briefs and at oral argument, that the corporate veil of Melba should be pierced in order to reach Bankers Trust. In support of this argument they point out that when Antigua Condominium was transferred to Bankers Trust by 85th Street Development Corporation, Bankers Trust designated Melba as the grantee rather than taking title in its own name. In both the declarations and the briefs, appellants assert that through this transfer Melba received property worth $5,500,000 without paying any consideration. They further contend that Bankers Trust had absolute control and direction over Melba and that all of the managing officers, directors, and employees directing the affairs of Melba were at all times employed by and paid by Bankers Trust.

We are satisfied that these allegations, as presented in the Second Amended Declaration, failed to make out an action for piercing the corporate veil of Melba to reach Bankers Trust. We therefore conclude that the lower court was correct in sustaining Bankers Trust's demurrer on that basis.

It may well be true that Bankers Trust placed the corporate body of Melba between itself and any liability arising from the operation of Antigua Condominium. It is apparently true that Melba acted under the control and direction

of Bankers Trust. None of this is impermissible, however. It is for the very purpose of limiting liability that corporations are created in the first place. Moreover, it is common for one corporation to distance itself from potential liability arising from various transactions by creating and directing another corporation to manage them. The pleadings in the instant case show no more than an arrangement which is commonplace and accepted in the commercial world. Thus, the allegations, accepted as true, fail to establish a cause of action against the parent corporation. More is needed.

■ The law in Maryland is quite clear that in order to strip away the corporate veil one must show fraud or similar conduct. "The common thread running through the Maryland cases ... is that the corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.,* 275 Md. 295, 312, 340 A.2d 225 (1975). As eloquently stated by Chief Judge Gilbert in *Dixon v. The Process Corporation,* 38 Md.App. 644, 645–46, 382 A.2d 893 (1978):

> A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving a maximum profit with a minimum exposure to liability. When such an entity is the parent of multiple offspring in the form of subsidiary corporations, woe unto the creditor who seeks to rip away the corporate facade in order to recover from one sibling of the corporate family what is due from another in the belief that the relationship is inseparable, if not insufferable, for his is a herculean task.

(footnote omitted). The Chief Judge stressed these points in concluding: "We make clear that the rule of law in this State is that no matter how flimsily woven is the corporate curtain, it may not be flung aside except to prevent fraud or enforce a paramount equity." *Id.* at 656, 382 A.2d 893.

■ Nowhere in appellants' pleadings do they allege fraud, or that Melba was a mere shell or a sham corpora-

tion, or that they were deceived into thinking they were dealing with Bankers Trust instead of Melba. Nor do they allege that it was necessary to disregard the corporate entity of Melba in order to enforce a paramount equity.

Bankers Trust held a mortgage on the property owned by 85th Street Corporation. In order to avoid the complications of foreclosure proceedings and in settlement of pending litigation for default, Bankers Trust accepted a conveyance of the mortgaged property in satisfaction of the $5,500,000 mortgage debt. It directed that the conveyance be made to Melba, a New York corporation formed by Bankers Trust to engage in the business of developing real estate. Melba was a wholly owned subsidiary of Bankers Trust. Melba paid no consideration for the deed but channelled all funds it received through the sale of condominium units to Bankers Trust. That was a perfectly reasonable and legitimate arrangement, especially considering that Bankers Trust apparently had the first claim to any money generated by the property. Those facts do not amount to fraud; since no more was alleged, the demurrer of Bankers Trust was properly sustained without leave to amend.

## II. USE OF DEMURRER TO RAISE DEFENSE OF LIMITATIONS

The first pleading in this case was a Bill of Complaint filed in September of 1981. On December 3, 1984, appellants filed their third attempt to amend the pleadings, titled "Revised Second Amended Declaration," and appellees responded with their third demurrer. The pleadings thus traversed the time when the old rules of procedure were replaced by the new Maryland rules.

Appellants contend that in an action at law the defense of limitations may not be raised by demurrer, citing *Hoover v. Williamson*, 236 Md. 250, 203 A.2d 861 (1964). In *Hoover*, the Court pointed out that by virtue of (then) Rule 371b any defense to a bill of complaint or petition in equity appearing on the face thereof could be made either by demurrer or by

answer, whereas in actions at law the rules provided that the defense of limitations must be specially pleaded. *See* former Rules 342c 1 d (actions *ex Contractu*) and 342c 2 a (actions *ex Delicto*). Thus, appellants argue, a demurrer in this case was improper as the action was one at law. The question facing us, therefore, is whether to apply to a case now properly governed by the new Maryland rules case law which interpreted the old rules of procedure. Our answer is that we must retire the old case law and follow the new rules.

After July 1, 1984, new rules went into effect with at least one avowed purpose being to eliminate the distinction between law and equity insofar as pleadings are concerned. Appellants filed their Revised Second Amended Declaration in December of 1984; and although they persistently referred to this pleading as a declaration, it was a complaint under Md.Rules 2–101, 2–302 and 2–303 and should have been so captioned. Likewise, appellee Melba responded with a Motion Ne Recipitur and to Strike, Renewal of Demurrer and Third Demurrer. This was totally inappropriate as demurrers were expressly abolished by Rule 2–302, yet there was no reason why the lower court could not have construed appellees' pleading as a motion to dismiss under Rule 2–322(b), and we shall assume the court did so.[1]

■ Rule 2–323(g) provides that when proceeding by way of answer to a complaint a party shall set forth affirmative defenses, such as limitations, as separate defenses. Rule 2–322(b), however, permits certain defenses to be made prior to answer by motion to dismiss, including the failure to state a claim upon which relief can be granted. We interpret Rule 2–322(b) as being broad enough to permit the defense of limitations to be raised by motion to dismiss if the complaint shows on its face that no relief can be granted because the claim is barred by limitations.

---

**1.** In the discussion which follows we shall use the term demurrer for the sake of simplicity, because it was designated as such, but we are treating the pleading as if it were a properly filed motion to dismiss.

In the instant case, as we will discuss *infra*, it *was* apparent on the face of the pleadings that most of the claims were barred by the statutes of limitations applicable thereto. The pleadings included copies of the deeds of all of the individual unit owners, which reflected the dates of transfer, and other relevant dates were included within the allegations in the declarations. The deeds had become part of the pleadings when they were produced by appellants in response to a demand for production of written instruments. That demand was made pursuant to former Rule 326 which provided, in part, that documents filed in response to the demand "shall be treated as if incorporated in the pleading." Thus, it could be determined from the face of the pleadings whether the statute of limitations barred a particular claim, and, therefore, the use of a demurrer (motion to dismiss) was permissible.

## III. STATUTES OF LIMITATIONS

The most difficult issues to resolve are those concerning the statutes of limitations. The difficulties arise because, in addition to the Council of Unit Owners, there are eighty-three persons who own, separately or jointly, forty-five individual condominium units. Appellee Melba asserted in its demurrer that every claim asserted by all of the plaintiffs was barred by a statute of limitations applicable to that claim. The court agreed and sustained the demurrer.

To facilitate disposition of these issues, we shall separate those claims brought by the Council from those brought by the individuals and discuss in sequence the various separate claims of the individuals.

### A. *Council of Unit Owners*

The Council asserted two claims. In the first and second counts, it sued on behalf of the unit owners and on its own behalf for breach of warranties and on behalf of the unit owners for breach of contract. For reasons set out below, the Council was barred from bringing those claims by the applicable statutes of limitations. Since these bars were

apparent on the face of the pleadings, Melba's demurrer to the Revised Second Amended Declaration was properly sustained as to those two counts.

### 1. Breach of Implied Warranty

The Council is provided a right to sue by Md.Real Prop. Code Ann. § 11–131(c) (1981). Under this statute, the Council may bring suit for breach of implied warranty. That section provides that in addition to implied warranties set out by § 10–203,[2] running to individual unit owners, there is an implied warranty running to the Council itself relating to common elements. The section reads as follows:

(c) *Warranty on common elements.*—(1) In addition to the implied warranties set forth in § 10–203 of this article there shall be an implied warranty on common elements from a developer to the council of unit owners. The warranty shall apply to: the roof, foundation, external and supporting walls, mechanical, electrical, and plumbing systems, and other structural elements.

(2) The warranty shall provide that the developer is responsible for correcting any defects in materials or workmanship, and that the specified common elements are within acceptable industry standards in effect when the building was constructed.

(3) The warranty on common elements commences with the first transfer of title to a unit owner. The warranty on any common elements not completed at that time shall commence with the completion of that element or with its availability for use by all unit owners, whichever occurs later. The warranty extends for a period of 3 years.

(4) A suit for enforcement of the warranty on common elements shall be brought only by the council of unit owners.

The limitations period is set out in § 11–131(d), which reads: "Notice of a defect shall be given within the warranty

---

**2.** Md.Real Prop.Code Ann. § 10–203 (1981) is discussed in section III B 2 of our opinion, *infra.*

period and suit for enforcement of the warranty shall be brought within a year of the warranty period." The three year warranty period plus the one year limitations period creates a total period of four years.

■ The statute specifically states that the three year warranty period commences with the *first* transfer of title to a unit owner which, by appellants' own assertions, was on September 17, 1977. It is true that the statute also provides that the warranty period will not begin to run on those common elements not completed at the time of the first transfer and will not begin until those elements are completed. Appellants insisted at oral argument that in fact construction was ongoing and that certain common elements were not completed until some time after September 17, 1977. That contention, however, is inconsistent with the allegations of the Revised Second Amended Declaration, which clearly imply that the common elements were completed by the time of the first transfer. Appellants argue that the common elements were not complete because they did not conform to the construction plans and specifications as warranted. That argument is patently ridiculous. If we were to hold that common elements are completed only when no breaches of warranty exist, the statute of limitations for breach of warranty would never begin, therefore never terminate. That would hardly be consistent with the intent of the legislature in enacting statutes of limitation.

Inasmuch as the pleadings disclose that the common elements of the condominium were completed by September 17, 1977, the claim asserted in Count One of the Revised Second Amended Declaration was barred by limitations. The three year warranty period began on September 17, 1977, the date of the first transfer, and expired on September 17, 1980. The one year period of limitations, therefore, expired on September 17, 1981. Since suit was not filed until September 24, 1981, it was apparent on the face of the pleadings that the Council's warranty claim was time barred. The demurrer was properly sustained as to that claim.

## 2. Breach of Contract

The Council asserts a representative right to sue on behalf of two or more unit owners by virtue of Md.Real Prop.Code Ann. § 11–109(d)(4) (1981), which provides, in pertinent part, that

[t]he council of unit owners has, subject to any provision of this title, the declaration, and bylaws, the following powers: ...

(4) To sue and be sued, complain and defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners in matters affecting the condominium....

Appellees, in turn, argue that this section does not confer standing on the Council where it does not otherwise exist but merely provides capacity to sue. Furthermore, they contend, the Council had no standing with respect to the breach of contract claim because it did not have a contractual relationship with Melba.

With respect to the breach of warranty claim, the Council has no greater right in its representative capacity than the unit owners themselves have; and, as we shall discuss, *infra*, the warranty claims of the individual unit owners are barred by limitations, the bar being apparent on the face of the Revised Second Amended Declaration.

The Council essentially argues that it has a right to sue on behalf of the unit owners for breach of the following clause which appeared in each contract of sale and which was re-printed in paragraph nine of the Revised Second Amended Declaration:

Seller will make any necessary repairs, adjustments, or replacements to the condominium unit and item of personal property specified herein or the common elements of the condominium required as the result of faulty construction, faulty materials, faulty manufacture, or faulty installation, provided that notice of the defect shall be given Seller within a period of one (1) year accounting from the date of settlement under this Contract.

As this action is for breach of contract, the applicable statute of limitations is three years. Md.Cts. & Jud.Proc. Code Ann. § 5–101 (1984). The Council is barred from asserting this claim because appellants stated, in paragraph eleven of the Revised Second Amended Declaration, that

the officers and directors of the COUNCIL had from time to time within the first year of occupancy of the first condo units conveyed by the developer defendant Melba to [the Dailys and the Dolans], both purchasers having executed settlement documents on or about September 17, 1977 notified the defendants directly and/or by their agents, servants and employers of *all the construction defects discovered in the common elements* and in the individual units which defects are hereinafter detailed in paragraph 12.

(emphasis added). Paragraph twelve lists numerous specific defects in common elements and individual units. In effect, appellants assert that notice of all the enumerated defects which Melba failed to repair, in breach of contract, was given within one year of September 17, 1977, the date of the first deeds. The one year period in which notice could have been given pursuant to the contracts of sale would thus end on September 17, 1978, and the three year statute of limitations for actions *ex contractu* would have expired on September 17, 1981. Since the original suit was not filed until September 24, 1981, the second count of the Revised Second Amended Declaration was barred by the statute of limitations, and the demurrer was properly sustained as to that count.

### B. *Individual Unit Owners*

There were three bases for suit by the individual unit owners against Melba: breach of express warranties as provided in Md.Real Prop.Code Ann. §§ 10–202, 10–204 (1981); breach of implied warranties provided in Md.Real Prop.Code Ann. §§ 10–203 and 11–131(b) (1981); and breach of contract. Appellants asserted all three but grouped the claims together in the following manner: beginning with

the fifth count, for each condominium unit two counts were listed, each one incorporating by reference all the general allegations set out by paragraphs one through twelve of the first count of the declaration; one count for each unit was for breach of implied *and* express warranties, with all defects listed immediately thereafter; the other count was for "Defendants' breach of contract, and Defendants' failure to correct defects," listing the defects immediately thereafter. The third count of the declaration was a similar breach of contract claim asserted, as to all units, by the unit owners collectively; the fourth count was a breach of warranty claim by all unit owners collectively. None of the counts referred to any specific statutory warranty or explained exactly what warranties were involved. We shall examine each possible basis for suit.

### 1. Breach of Express Warranty

Md.Real Prop.Code Ann. § 10–202 (1981) provides for the creation, exclusion, or modification of express warranties. In this case we are concerned with the creation of such a warranty. The relevant part of the statute reads as follows:

(a) *Creation of warranties.*—Express warranties by a vendor are created as follows:

(1) Any written affirmation of fact or promise which relates to the improvement and is made a part of the basis of the bargain between the vendor and the purchaser creates an express warranty that the improvement conforms to the affirmation or promise.

(2) Any written description of the improvement, including plans and specifications of it, which is made a part of the basis of the bargain between the vendor and the purchaser creates an express warranty that the improvement conforms to the description.

(3) Any sample or model which is made a part of the basis of the bargain between the vendor and the purchaser creates an express warranty that the improvement conforms substantially to the sample or model.

(b) *Formal words unnecessary.*—To create an express warranty, it is not necessary to use formal words, such as "warranty" or "guarantee," or that there be a specific intention to make a warranty. However, an affirmation merely of the value of the improvement or a statement purporting to be an opinion or commendation of the improvement does not create a warranty.

This section is specifically made applicable to the sale of condominium units by § 11–131(a), which reads:

(a) *Application of §§ 10–202 and 10–203.*—The provisions of §§ 10–202 and 10–203 of the Real Property Article apply to all sales by developers under this title. For the purposes of this title, a newly constructed dwelling unit means a newly constructed or newly converted condominium unit and its appurtenant undivided fee simple interest in the common areas.

On appeal, appellants assert that the units did not conform to the construction plans and specifications. If properly pleaded this would have constituted an allegation that the developer had breached the express warranty provided by the plans and specifications, as set out in § 10–202(a)(2), *supra.* Although we do not feel this was properly alleged in the declarations, that issue is moot as appellants failed to bring this claim within the statute of limitations.

■ When § 11–131 made the express warranty provision of § 10–202 applicable to condominium units and not just private dwellings, it imposed a limitations period of one year on actions brought thereunder. Section 11–131(d) provides: "Notice of defect shall be given within the warranty period and suit for enforcement of the warranty shall be brought within a year of the warranty period."

The warranty period is set out in § 10–204(b), which reads:

(b) *Expiration of warranty.*—Unless an express warranty specifies a longer period of time, the warranties provided for in this subtitle expire:

(1) In the case of a dwelling completed at the time of the delivery of the deed to the purchaser, one year after the delivery or after the taking of possession by the purchaser, whichever occurs first; and

(2) In the case of a dwelling not completed at the time of delivery of the deed to the purchaser, one year after the date of the completion or taking of possession by the purchaser, whichever occurs first.

As the declarations imply that the units were completed when deeds were delivered to individual owners, any express warranty began to run from the date of the deed, such deeds being made part of the pleadings as explained above. Since suit was filed on September 24, 1981, the absolute earliest that an individual could have taken the deed to his unit and still have been eligible to bring suit would have been September 24, 1979. A careful review of the record shows that the last deed from Melba was dated June 1, 1979, conveying a unit to A. Dewey Jordan and Candace Jordan. All other deeds from Melba were prior to June 1, 1979.

Since the last deed was dated June 1, 1979, the last express (§ 10–202) warranty period expired on June 1, 1980, and the limitations period expired June 1, 1981, almost four months before the original suit was filed. Thus, it was apparent on the face of the pleadings that all of the claims for breach of express warranty were barred by the statute of limitations, and the demurrer was properly sustained as to all such claims.

■ It has been suggested that the appropriate period of limitations for the § 10–202 express warranty is two years under § 10–204(c), not one year under § 11–131(d). We disagree. When § 11–131(a) made the express and implied warranties of §§ 10–202 and 10–203 applicable to condominium sales, it specifically provided a one year period of limitations for them in § 11–131(d). The provisions of § 10–204, containing a two year limitation period, were not made applicable to condominiums by § 11–131.

## 2. Breach of Implied Warranties

Our disposition of the issues surrounding implied warranties is much the same as that for those issues involving express warranties, above, and we reach the same result.

There are two versions of implied warranty available to the purchaser of a condominium unit, one provided by Md.Real Prop.Code Ann. § 10–203 (1981), made applicable to condominium sales by § 11–131, and an additional warranty provided by § 11–131(b). The relevant portions of § 10–203(a) read as follows:

(a) *Warranties which are implied.*—Except as provided in subsection (b) or unless excluded or modified pursuant to subsection (d), in every sale, warranties are implied that, at the time of the delivery of the deed to a completed improvement or at the time of completion of an improvement not completed when the deed is delivered, the improvement is:

(1) Free from faulty materials;

(2) Constructed according to sound engineering standards;

(3) Constructed in a workmanlike manner; and

(4) Fit for habitation.

The relevant portions of § 11–131(b) read as follows:

(b) *Warranty on unit from developer to owner.*—In addition to the implied warranties set forth in § 10–203 of this article there shall be an implied warranty on an individual unit from a developer to a unit owner. The warranty on an individual unit commences with the transfer of title to that unit and extends for a period of 1 year. The warranty shall provide:

(1) That the developer is responsible for correcting any defects in materials or workmanship in the construction of walls, ceilings, floors, and heating and air conditioning systems in the unit; and

(2) That the heating and any air conditioning systems have been installed in accordance with acceptable industry standards and:

(i) That the heating system is warranted to maintain a 70° (F) temperature inside with a 0° (F) temperature outside, with winds not exceeding 15 miles per hour; and

(ii) That the air conditioning system is warranted to maintain a minimum 15% differential between the inside and outside temperature.

■ The limitations period for these warranties, as for express warranties, is set out in § 11–131(d), that is, within one year of the expiration of the warranty period. As stated above, the two year statute of limitations period of § 10–204(c) is not applicable to the § 10–203 warranty when that warranty is extended to condominium sales by § 11–131(b). The § 10–203 warranty period is one year, as provided by § 10–204(b); the § 11–131(b) warranty period is also one year.

Since the last deed from Melba to any of the unit owners was dated June 1, 1979, the last warranty period for any implied warranty expired on June 1, 1980, and the last limitations period expired on June 1, 1981, a little less than four months before the original suit was filed. It was apparent on the face of the pleadings that the claims of all appellants for breach of implied warranties were barred by the statute of limitations. Consequently, the demurrer was properly sustained as to all of the warranty claims.

### 3. Breach of Contract

Appellants also pleaded breach of contract, and on these claims they meet with more success. The specific contractual provision which forms the basis for these claims was reprinted in Paragraph 9 of the Revised Second Amended Declaration. We have referred to it before and set it out again below. Every contract of sale from Melba to the individual buyers contained the following provision:

[The condominium is sold "as is"] except as follows: Seller will make any necessary repairs, adjustments, or replacements to the condominium unit and item of personal property specified herein or the common elements of the condominium required as the result of faculty con-

struction, faulty materials, faulty manufacture, or faulty installation, provided that notice of the defect shall be given Seller within a period of one (1) year accounting from the date of settlement under this Contract.

The contract essentially provides that if the buyer notifies the seller of defects within one year the seller must repair them. If the seller does not repair them, he is in breach. The limitations period for breach of contract is three years. Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1984).

■ We held, *supra*, that the breach of contract claim asserted by the Council on behalf of the unit owners in Count Two was barred by limitations because the breach alleged was failure to repair the defects specified in Paragraph 12 of the first count, and notice of all those defects was given within one year of September 17, 1977. The same reasoning does not necessarily apply to the breach of contract claims asserted by the unit owners in the odd numbered counts between Counts Five and Ninety-Three. Each of the claims asserted by the unit owners allege defects in addition to those enumerated in Paragraph 12 of Count One, and there is an allegation contained in Count One and incorporated by reference in all succeeding counts to the effect that notices of defects were being given to Melba as late as May 6, 1980. The pleadings do not specify on what dates and as to what defects the later notices were given. Consequently, we must assume that individual unit owners could have given proper notice pursuant to their contracts on the last day of their one year periods and that if suit was filed within three years of that date it was timely brought. On the face of the pleadings, then, it is not apparent that all claims for breach of contract were barred by the statute of limitations and, therefore, the sustaining or granting of the demurrer or motion to dismiss was improper as to certain counts. For that reason, we reverse the court's ruling sustaining appellee's demurrer as to counts 5, 9, 11, 13, 15, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, 63, 67, 69, 73, 75, 77, 79, 81, 83, 85, 87, 89, 91, and 93.

The circuit court's rulings, sustaining the demurrers, are affirmed as to the remaining counts.

It may well appear on discovery that some or all of the appellants listed above either gave no notice of defects or gave notice soon enough after settlement to begin the limitations period running early enough to bar them from suit. Our holding is confined to the defense of limitations as that defense is apparent on the face of the pleadings. By the same token, we are not ruling upon the question of whether a unit owner who did not purchase directly from Melba can recover from Melba for breach of a clause in the contract of sale between Melba and his predecessor in title. We count twelve such plaintiffs. That issue was not decided by the court below, and we shall not address it here. Md.Rule 1085.

### C. *Poffenberger Discovery*

■ Appellants cite the "discovery rule" of *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981), for the proposition that the statutes of limitations did not begin to run on the warranty claims until the defects sued on were discovered. We disagree. *Poffenberger* was specifically directed to cases in which there was no statutory period given for when an action accrues. The Court stated: "There being an absence of statutory direction, the question when an action accrues is left to judicial determination." *Id.* at 633, 431 A.2d 677. There is no such absence of statutory direction in the instant case; all of the warranties are specifically given a life of one year, and the action will accrue in that time or not at all, discovery or lack thereof notwithstanding.

> In a case in which limitations is an issue it is necessary to ascertain the date from which the cause of action accrues. The general rule, undoubtedly, is that limitations against a right or cause of action begins to run from the date of the alleged wrong and not from the time that wrong is discovered.

*Leonhart v. Atkinson,* 265 Md. 219, 223, 289 A.2d 1 (1972). The discovery rule is a narrow exception to this general

rule, and we will not apply it in the face of a contrary statutory directive.

In any event, all of the appellants have alleged that they gave notice of defects within one year after acquiring their units. Consequently, by their own acknowledgment, they had knowledge of the alleged breaches of warranty. That is all that is required, under *Poffenberger,* to start the running of the statute of limitations. It is not necessary that a party have knowledge of all details of his cause of action; it is enough that he have actual knowledge of facts sufficient to put an ordinarily prudent person on inquiry, thus charging him " 'with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.' " 290 Md. at 637, 431 A.2d 677, quoting *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 402, 250 A.2d 69 (1969). *See also O'Hara v. Kovens,* 60 Md.App 619, 631, 484 A.2d 275 (1984) *cert. granted,* 303 Md. 20, 491 A.2d 586 (1985).

Similarly, appellants contend that "the promise to repair is [a] ... contractual promise and the statute of limitations does not begin to run until there is a refusal to repair." Again we disagree. The contract specifically required notice to be given within one year; we hold that limitations begins to run at the giving of notice within one year. Any notice given later than one year is itself outside of the contractual provisions and need not be honored.

### D.  *Potterton Promise*

■ Appellants contend that the statute of limitations should have been tolled because after they requested the developer to correct defects it acknowledged its obligation and promised to correct the defects. Appellants refer to Melba's letter dated May 6, 1980, stressing that Melba acknowledged its obligation to complete certain repairs and promised to complete ongoing repairs. This letter was an exhibit attached to the Revised Second Amended Declaration.

In support of their contention, appellants rely on *Potterton v. Ryland Group, Inc.*, 289 Md. 371, 424 A.2d 761 (1981). We find that case factually inapposite on one crucial point. Referring to the letter involved in *Potterton*, the Court said, "The 10 July 1975 letter consisted of both an acknowledgment that the seller had not properly performed its obligation and an express unconditional promise to perform properly." *Id.* at 378, 424 A.2d 761. In sharp contrast, Melba's letter was anything but an express unconditional promise to perform. After listing all of the repairs which Melba was making, the letter said, "All of the above quite clearly points out that Melba Investors Atlantic, Inc. has been responsive in every area of our responsibility. We further feel that the warranty work which has been on going [sic] for quite some time extended far beyond our legal obligation." Melba's letter was not an express unconditional promise and, therefore, did not extend the limitations period.

E. *The "Repair Doctrine" and Equitable Estoppel*

Appellants ask us to apply the so-called "repair doctrine," citing cases from other jurisdictions to the effect that the statute of limitations is tolled while attempts are made to cure defects. That doctrine, however, was recently rejected by the Court of Appeals. *Booth Glass Company, Inc. v. Huntingfield Corporation*, 304 Md. 615, 500 A.2d 641 (1985).

Appellants also urge the application of equitable estoppel to toll the statute of limitations. This doctrine, too, was explored by the Court of Appeals in *Booth Glass Company, Inc. v. Huntingfield Corporation, supra,* wherein the Court noted that "equitable estoppel will not toll the running of limitations absent a showing that the defendant 'held out any inducements not to file suit or indicated that limitations would not be pleaded.'" 500 A.2d at 645, citing *Nyitrai v. Bonis*, 266 Md. 295, 300, 292 A.2d 642 (1972), *Leonhart v. Atkinson*, 265 Md. 219, 228, 289 A.2d 1 (1972), *Jordan v. Morgan, Adm'x*, 252 Md. 122, 132,

249 A.2d 124 (1969), and *Cornett v. Sandbower, Adm'r.*, 235 Md. 339, 342, 201 A.2d 678 (1964). There is no suggestion of such inducements in this case; appellants merely contend that the Council had the exclusive right to sue on matters affecting the common elements under Md.Real Prop.Code Ann. § 11–131(c)(4) and that until October 7, 1978, the Council was controlled by Melba. They conclude that the Council would not sue because Melba would not sue itself. These allegations, however, simply do not amount to an equitable estoppel that would toll the one year period of limitations (§ 11–131(d)), which began, as we have heretofore noted, on September 17, 1980.

### F. *Effect of Melba's Failure to File Articles of Transfer*

When 85th Street conveyed Antigua to Melba through Bankers Trust, it conveyed all of its assets. Appellants contend that Md.Corps. & Ass'ns Code Ann. § 3–107 et seq. (1985), required Melba to file Articles of Transfer and that title was not effectively transferred until that was done. Articles were not filed until November 16, 1977, almost two months after the first units were sold. Thus, appellants argue, good title could not have been transferred until that time; therefore, the warranty periods and statutes of limitations did not begin to run until that date.

We disagree with this argument. The purpose of the filing requirements is to insure that creditors are properly informed of the sale or disposition of all or substantially all of a debtor's assets. We decline to extend to appellants, who were not creditors of 85th Street, the windfall of being able to take advantage of this technical flaw in a context wholly unrelated to that intended by the legislature. To do otherwise would be to interpret the statute in a manner entirely different from its reasonable meaning. As the Court of Appeals stated in *State v. Fabritz:*

> The cardinal rule in the construction of statutes is to effectuate the real and actual intention of the Legislature.... Equally well settled is the principle that stat-

utes are to be construed reasonably with reference to the purpose to be accomplished, ... and in light of the evils or mischief sought to be remedied....

276 Md. 416, 421, 348 A.2d 275 (1975) (citations omitted), on remand, 30 Md.App. 1, 351 A.2d 477 *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976).

██ Title to each unit was transferred, within the meaning of § 11–131(b), when Melba executed and delivered a deed for that unit to the purchasers thereof. Melba's failure to file Articles of Transfer may have created a cloud on the titles but did not prevent title from passing. The § 11–131(b) warranties and limitations are triggered by transfer of title, not transfer of perfect title. The requirements of Md.Corps. & Ass'ns Code Ann. § 3–107 do not extend the statutes of limitations applicable to appellants' claims.

JUDGMENTS AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEES.