## MICHIGAN CARBON-WORKS *v.* SCHAD.

(*Supreme Court, General Term, Fifth Department.* June 23, 1888.)

1. CONTRACTS — MUTUALITY — EXECUTION IN DUPLICATE — FAILURE OF PROMISEE TO SIGN.
    Where it appears that an instrument by which the defendant was appointed agent to sell fertilizers for the plaintiff was drawn in duplicate, and signed by defendant, and forwarded to plaintiff, and that the parties acted under this agreement for some time, in an action against the agent for the conversion of money received from sales to his own use, a copy of the agreement in the possession of the plaintiff may be given in evidence, though not signed by him.

2. SAME—EVIDENCE—IMMATERIALITY.
    The admission of evidence tending to show that a duplicate of the instrument sued on was seen at a former trial in the possession of defendants' attorney, is immaterial where it is not shown that it was in fact delivered to defendant, or that it was signed by plaintiff.

3. PRINCIPAL AND AGENT—CONSTRUCTION OF AGREEMENT—CONVERSION.
    Where an agreement by which defendant was appointed agent to sell fertilizers provides that the fertilizers on hand, and the money derived from the sale thereof, shall continue and remain the property and money of plaintiff, the defendant may be held liable for converting to his own use money received from sales, although he was also authorized to sell on time, and engaged to guaranty the payment of the sums for which the sales might be made.

Appeal from circuit court, Niagara county.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ. *William C. Greene,* for appellant. *E. M. & F. M. Ashley,* for respondent.

HAIGHT, J. This action was brought to recover for a quantity of Homestead's superphosphate, which it is claimed that the defendant had sold for the plaintiff, as agent, and had converted the money derived from said sale to

his own use.   The evidence tends to show that an instrument in writing was prepared, in and by which the defendant was appointed to sell the plaintiff's fertilizer upon commissions agreed upon; that he should keep a sufficient amount on hand to supply the demand of the trade in his territory; and that such fertilizer held by the defendant, and all the proceeds of sales held by him during the existence of the agreement, should continue and remain at all times the property and money of the plaintiff.   It appears that the instrument was drawn in duplicate; that both were signed by the defendant, and transmitted to the plaintiff at its place of business, in Detroit, Mich.; and some evidence tends to show that, on a former trial of this action, one of the duplicate agreements was seen in the possession of the defendant's attorney; but the evidence upon this point leaves the question in doubt as to its being a duplicate, and does not show that it was signed by the plaintiff.   The duplicate agreement produced by the plaintiff upon this trial was signed by the defendant, but is not signed by the plaintiff.   Immediately after the agreements were drawn and signed by the defendant, he, through the agent of the plaintiff, made an order for a quantity of the phosphate; and the evidence tends to show that he thereafter received and sold a large quantity; that he collected and had in his hands a balance not paid over at the time the action was brought, amounting to $1,193.53, which, with the interest accrued thereon, would make the amount of the verdict.

It is contended, in the first place, that it was error to admit the contract in evidence, for the reason that it was a mutual contract, and was not executed by the plaintiff.   We are inclined, however, to the view that, under the circumstances of the case, the contract was properly received.   The evidence tends to show that the parties commenced doing business under it, and continued for a considerable time; that the paper was in fact executed and delivered by the defendant, and was held by the plaintiff, who produced it in court upon the trial of this action.   The defendant gave his first order immediately after the contract was signed and delivered by him to the plaintiff's agent, and thereafter received the phosphate called for,—thus indicating an intention on the part of the parties to the contract to carry out and become bound by its provisions; and the rule is that a promise void for want of mutuality becomes valid and binding upon the execution of it by the promisee. *Marie* v. *Garrison,* 83 N. Y. 14; *Chouteau* v. *Suydam,* 21 N. Y. 179.

It is contended, in the second place, that the evidence in reference to the duplicate contract delivered to the defendant was improperly received.   We do not regard it worth while to enter upon a discussion of this question, for the reason that the evidence failed to show that the duplicate was in fact delivered to the defendant, or that it was signed by the plaintiff; and, in the absence of this evidence, that which was received was of no account, and could do no harm.

Again, it is claimed that the contract established an agreement between the parties by which the defendant engaged to sell the phosphate for a commission to be paid; that he was to guaranty the payment of the sums for which the sales might be made, and that he was authorized to sell on time; that he became a surety, and could not be held liable for a conversion.   All this may be true as to the phosphate sold on credit, and which had not been collected by the defendant; but, under the express provisions of the contract, the fertilizer on hand, and the money derived from the sale thereof, was to continue and remain the property and money of the plaintiff.   So that, while he may not be liable as for a conversion for the money not collected on sales made by him, yet as to the money received by him on sales made it appears to us that he was properly held liable.   *Wallace* v. *Castle,* 14 Hun, 106.   The judgment and order should be affirmed.   So ordered.

BARKER, P. J., and BRADLEY and DWIGHT, JJ., concur.