[No. 20385. *En Banc.* December 15, 1927.]

LEONCE A. P. DAVIN, *Appellant,* v. P. B. DOWLING, *Defendant,* THIRD NATIONAL BANK, *Respondent.*[1]

[1] TROVER AND CONVERSION (3, 14)—ACTS CONSTITUTING—APPRO-PRIATION OF PROCEEDS OF SALE—PERSONS LIABLE. A bank, holding a chattel mortgage on a crop which was subject to a prior lien for taxes and interest due a mortgagee during the period of redemption, is liable for assisting and aiding the owner in a conversion by the selling of part of the crop without notice to such mortgagee, where, upon being referred to, it consented to the sale, and took for the owner, and collected, notes for the price, crediting payments on the owner's account, without which the purchase would not have been made.

[2] SAME (1)—PROPERTY SUBJECT OF CONVERSION—MONEY. A bank, receiving money which was the proceeds of sales of a wrongfully converted crop, is not guilty of the conversion of the money applied by it on the wrongdoer's account with the bank, from the fact that it was charged with notice that the crop when sold was subject to a prior lien, where it did nothing to aid or assist in the conversion or sale of the crop.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered November 3, 1926, upon findings in favor of the defendant bank, in an action for conversion, tried to the court. Affirmed in part; reversed in part.

*James P. Neal* and *Pedigo & Watson,* for appellant.
*J. G. Thomas* and *W. A. Toner,* for respondent.

MAIN, J.—In form, this is an action for an accounting. In substance, it is one for conversion. The defendant, P. B. Dowling, did not resist the action and judgment was taken against him. The other defendant, the Third National Bank of Walla Walla, which will be referred to as the bank, contested, and the cause was tried to the court without a jury. Findings of fact

[1]Reported in 262 Pac. 123.

and conclusions of law were entered which denied a
recovery as to this defendant. From the judgment of
dismissal, the plaintiff appeals.

The facts essential to be stated are these: On No-
vember 10, 1920, P. B. Dowling, being then the owner
of a farm in Walla Walla county, mortgaged it to
Leonce A. P. Davin, the appellant. Subsequently, this
mortgage was foreclosed, and on March 24, 1923, Davin
became the purchaser at the foreclosure sale for the
sum of $24,600. During the year of redemption, Dowl-
ing remained in possession of the land and produced a
crop consisting of wheat and alfalfa. On March 21,
1923, Dowling made a chattel mortgage to the bank,
covering crops to be produced upon the land during
that year. This mortgage was for advancements then
made, and to be made from time to time. After the
crops had been produced, the wheat threshed and the
hay stacked, the same was sold without the consent or
approval of Davin.

By reason of Rem. Comp. Stat., § 602 [P. C. § 7917],
as construed in *Mount v. Rockford State Bank,* 134
Wash. 479, 236 Pac. 82, the lien of Davin for taxes and
interest during the year of redemption was superior to
that of the bank under its chattel mortgage, and the
bank was charged with notice of this statutory lien.

[1] The first question is, whether the bank aided
and assisted in the conversion of $430 worth of hay
which was sold to one Frank Shannon. The law is
that, where one aids and assists in a wrongful taking
of chattels, he is liable for conversion, the same as the
active participants. In *Starr v. Bankers' Union of the
World,* 81 Neb. 377, 116 N. W. 61, it was said:

"Where several parties unite in an act which con-
stitutes a wrong to another under circumstances which
fairly charge them with intending the consequences
which follow, it is a very just and reasonable rule of

the law which compels each to assume and bear the responsibility of misconduct of all. Cooley on Torts (2d Ed.) 153. Hence it is held that one who aids and assists in a wrongful taking of chattels is liable for the conversion, although he acted as agent for a third person. (Citing authorities.)"

In *Banks v. Windham*, 7 Ala. App. 616, 62 South. 297, it was said:

"The appellants' contention that all of the defendants were not shown to have been participants in the wrong complained of or connected with it so as to make them liable is not well taken. The evidence sufficiently connects each and all of them with the transaction complained of, and shows, besides, without conflict and by the evidence of one of the defendants, that the defendants received and applied the proceeds from the sale of the furniture on their claim for rent."

Inquiry, then, will be directed as to whether the bank aided and assisted in the conversion of the hay that was sold to Shannon. There is no evidence that it aided and assisted in the conversion of any other portion of the crop. As to this $430 worth of hay that went to Shannon, it appears that Shannon went to Dowling to purchase the hay, and was told that he could not sell it because the bank had a lien on it. Shannon went to the bank, and was told by an officer thereof to see Dowling and that it would be all right with the bank. Shannon was unable to pay for the hay at the time and arranged for credit through the bank. A note was drawn, by the officer of the bank with whom he was dealing, for the purchase price of the hay, and was left in the bank. The note was payable to Dowling. Shannon, from time to time, paid money to the bank on account of the note and this was credited by the bank upon the indebtedness which Dowling owed it by virtue of the advancements which it had made under the chattel mortgage. From these facts, it must be

found that the bank aided and assisted in the conversion of the hay which was sold to Shannon. Without the consent and cooperation of the bank, Shannon would have been unable to make the purchase. The bank's mortgage was good as between it and Dowling. For the sum of $430, therefore, the bank became liable as a party to the conversion.

[2] The next question is whether the bank is liable for the balance of the money which it received as proceeds of the crop. This question is reduced to whether simply knowledge on the part of the bank, at the time it received the money and applied it upon Dowling's debt, was sufficient to make it guilty of the conversion of the money. Davin's lien for taxes and interest was upon the crop and not upon the money. As to the crop, other than that that went to Shannon, as above stated, the bank did not in any manner aid and assist in the conversion thereof. Money, under certain circumstances, may become the subject of conversion. But there can be no conversion of money, unless it was wrongfully received by the party charged with conversion or unless such party was under obligation to return the specific money to the party claiming it. In *Hazelton v. Locke,* 104 Maine 164, 71 Atl. 661, it was said:

"Legal currency may be the subject of an action of trover. There is nothing in the nature of money making it an improper subject of this form of action so long as it is capable of being identified, as when delivered at one time, by one act and in one mass. (*Burns v. Morris,* 47 Tryw. R. 485; *Royce, Allen & Co. v. Oakes,* 20 R. I. 252, 38 Atl. 371; *Walter v. Bennett,* 16 N. W. 220; *Farrelly v. Hubbard,* 148 N. Y. 592, 43 N. E. 65; *Conaughty v. Nichols,* 42 N. Y. 83; *Vandelle v. Rohan,* 36 Misc. Rep. 239, 73 N. Y. Supp. 285; *Reeside's Executor v. Reeside,* 49 Pa. 322, 88 Am. Dec. 503; *Ringo v. Field,* 6 Ark. 43; *Wood v. Blaney,* 107 Cal. 291, 40 Pac. 428; *Michigan Carbon Works v.*

*Schad,* 49 Hun 605, 1 N. Y. Supp. 490; *Wallace v. Castle,* 14 Hun (N. Y.) 106; *Duguid v. Edwards,* 50 Barb. (N. Y.) 408; *Graves v. Dudley,* 20 N. Y. 76), or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained (*Murphey v. Virgin,* 47 Neb. 692, 66 N. W. 652; *Donohue v. Henry,* 4 E. D. Smith (N. Y.) 162; *Coffin v. Anderson,* 4 Blackf. (Ind.) 395).''

In *Shrimpton & Sons v. Culver,* 109 Mich. 577, 67 N. W. 907, it was said:

"Trover is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money intrusted to his care."

In *Larson v. Dawson,* 24 R. I. 317, 53 Atl. 93, it was said:

"The question whether money can be the subject-matter of an action of trover generally depends upon whether there is any obligation on the part of the defendant to deliver specific money to the plaintiff."

It cannot be said that the bank, when it received the money knowing that it was the proceeds of the crop and applied it on an indebtedness of Dowling, did so wrongfully. Neither can it be said that the bank was under any obligation to deliver the specific money to Davin. In fact, it had no power to do so. It could have done nothing more than refuse to receive the money on a legitimate indebtedness of Dowling's, and then Dowling would have been free, so far as the bank was concerned, to have disposed of it as he saw fit. He could have paid it to Davin or to any other of his creditors. No case has been cited, and in our investigation we have been unable to find any, which holds that simply the receipt of money by one charged with knowledge that it comes from property which was the subject of a lien makes that party guilty of the conversion of the money.

The appellant relies upon the case of *Mount v. Rockford State Bank, supra,* as controlling, but the question here presented was not in that case and was neither discussed or decided. The only question there determined was whether the statutory lien for interest and taxes during the period of redemption was superior to a subsequent chattel mortgage.

As to the money received by the bank, other than the $430 derived from the Shannon transaction, the judgment of the trial court was correct. As to the latter transaction, the judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment against the bank.

MACKINTOSH, C. J., ASKREN, MITCHELL, PARKER, FRENCH, and TOLMAN, JJ., concur.

HOLCOMB, J., concurs in the result.