518 A.2d 174

**David R. LAWSON**

v.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY.**

**No. 916, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 9, 1986.

As Corrected Feb. 4, 1987.

John A. Sheehan (John G. Gill, Jr. and Gill & Sippel, on the brief), Rockville, for appellant.

Richard Ross (E. Joseph Fitzpatrick, Jr. and Ward & Klein, on the brief), Gaithersburg, for appellee.

Argued before WILNER, WEANT and ROBERT M. BELL, JJ.

WILNER, Judge.

There are two questions presented in this appeal: will an action in trover lie to recover a debt arising from an overpayment of money and, if so, when does that action accrue for purposes of the statute of limitations?

The relevant facts are as follows.

Commonwealth Land Title Insurance Company (Commonwealth) is a sophisticated national company that is in the business of selling title insurance and handling real estate and refinancing settlements. David R. Lawson is a businessman and investor. On December 20, 1978, Commonwealth conducted a settlement on the refinancing of two parcels of real estate in which Mr. Lawson had an interest. Between December 26, 1978, and April 11, 1979, Commonwealth disbursed funds pursuant to the settlement. By its own error, it overpaid Mr. Lawson $3,966. The disbursements were by check, which Mr. Lawson routinely deposited in his personal bank account.

Although the fact of the overpayment was readily apparent from Commonwealth's records on April 11, 1979, when the last disbursement of $11,357 was made to Mr. Lawson, Commonwealth claimed that it did not actually discover the error until July, 1981, when it "computerized" its account-

ing system. On August 5, 1981, it wrote to Mr. Lawson explaining the error and requesting a refund. The letter was sent to a former address, however, and it is not clear whether Mr. Lawson actually received it. On March 2, 1982, Commonwealth's attorney sent another letter, enclosing a copy of the 1981 letter, claiming that Lawson had been "unjustly enriched," and demanding payment of the $3,966. Lawson responded to that letter on March 15; he told counsel that he had moved his office and could not locate his records on the matter, and he asked for copies of the relevant documents. Commonwealth supplied the documents in May, 1982.

Mr. Lawson was apparently unimpressed, for he did not return the money. For whatever reason, however, Commonwealth took no further meaningful action for ten months. On March 18, 1983, it filed suit in the Circuit Court for Montgomery County.

As subsequently amended, Commonwealth's complaint pled three counts—conversion, unjust enrichment, and implied contract (moneys had and received). Count I, for conversion, alleged the erroneous disbursement of the $3,966, that as a result Commonwealth "suffered a loss of its own funds," and that Lawson had unjustly refused to return them. In his pleas to the amended declaration, Lawson asserted, among other things, that all three counts were time-barred. This was based on the notion that the actions accrued in April, 1979, which was more than three years before the suit was filed.

After a non-jury trial on an agreed statement of facts, the court, in a memorandum opinion and order dated July 11, 1985, found no evidence of circumstances that would put a person of ordinary prudence on notice of the overpayment, and thus regarded Commonwealth's causes of action as having accrued when it actually discovered the error in July, 1981. In light of that application of the "discovery" rule, which necessarily brought all three causes of action within the limitations period, the court did not consider whether, as a matter of substantive law, the alleged conversion of funds took place when Lawson first received and deposited the check in 1979 or when he ignored the demand

for refund in 1981 and 1982. Judgment was entered for Commonwealth in the amount of $3,716, and Lawson appealed.

In an unreported opinion filed January 28, 1986 (*Lawson v. Commonwealth Land Title Insurance Co.*, S.T.1985, No. 1138), we disagreed with the trial court's determination. We concluded that, under the agreed statement of facts, Commonwealth was on notice of the overpayment as soon as it was made—that a routine check of its escrow account would have turned up the discrepancy and that "the cause of action in this case accrued on or about April 11, 1979 when [Commonwealth] should have discovered the overage." Accordingly, we held that the actions sounding in contract (Counts II and III of the amended complaint) were time-barred.

That, of course, restored to relevance the issue of when the alleged conversion occurred. If, as urged by Commonwealth, the conversion of its funds did not occur until Lawson ignored its demand for payment, the action would be within the limitations period. Because that issue had not been addressed by the trial court, we remanded that aspect of the case for further proceedings.

On remand, Lawson offered two defenses to the conversion claim: (1) that the tort of conversion does not apply to the wrongful detention of money, and (2) that, if it does so apply, the conversion took place in April, 1979, when he received and deposited Commonwealth's check, not when he ignored the demand for payment, and thus that action also is time-barred. The trial court rejected both defenses and again entered judgment for Commonwealth. Hence, this second appeal, in which we are asked to review and opine upon those defenses.

Once again, we shall reverse. Under the circumstances of this case, we think that Lawson's first defense has merit, and we therefore need not address the second.

For those who enjoy strolling the historical paths of the common law, conversion is an interesting outing. Prosser says of it:

"Conversion is a fascinating tort, although it has largely eluded the attention of legal writers. Highly technical

in its rules and complications, perhaps more so than any other except defamation, it almost defies definition. The chief reason is that the hand of history, with its old common law forms of action, lies heavy upon this particular field."

W. Prosser, *Handbook Of The Law Of Torts*, 4th ed. § 15, p. 79 (1971) (footnotes omitted).

The tort arose from the common law action of trover, which developed in the 15th century as a branch or outgrowth of the action on the case. In its earliest form, the action was used in, and apparently limited to, situations where finders of lost goods refused to return them to the true owners; hence the notion of a "conversion" of the goods. Although the action and the tort have expanded beyond the case of lost goods and cover now nearly any wrongful exercise of dominion by one person over the personal property of another (*see Kalb v. Vega*, 56 Md.App. 653, 665, 468 A.2d 676 (1983), *cert. denied* 299 Md. 427, 474 A.2d 219 (1984)), that early use has had a continuing influence. As noted in the Restatement (Second) of Torts, § 242, comment d (1965):

"The modern action for the tort of conversion always has been colored by its descent from the common law action of trover, which originated as a remedy against the finder of lost goods who refused to return them. Because of this origin, and the persistence until comparatively recent years of the fiction of losing and finding, the action was narrowly limited in its scope, and it would not lie for the appropriation of any property which could not be lost and found. It would not lie for the appropriation of land, because land was incapable of being lost; and it would not lie for the appropriation of any choses in action or other intangible rights, which were incapable of being found."

It is, perhaps, for that reason that we occasionally see the tort described in terms of the unlawful exercise of dominion over a *chattel*. *See, for example*, Restatement (Second) of Torts, *supra*, § 22A; 1 Harper, James, and Gray, *The Law of Torts* § 2.7 (2d ed. 1986).

Most of the commentators agree that the tort has, in recent times, made a two-stage leap beyond the bounds of

chattels to permit recovery for the loss or deprivation of intangible property as well. In the first stage, the law came to regard the physical document evidencing an intangible right—a promissory note, a stock certificate, a bank book, etc.—as itself a chattel capable of conversion. In the second, it merged the underlying intangible right with the document so that the injured owner could recover not just the nominal value of the document itself that was wrongfully withheld but also the value of the right evidenced or represented by the document.

The Maryland Court of Appeals has been about as liberal in this expansion as any court. In *Penniman v. Winner*, 54 Md. 127 (1880), it held that an action of trover would lie for the wrongful detention of "a valuable security," in that case the equivalent of a promissory note. *Id.*, 136. In *Jones v. Ortel*, 114 Md. 205, 78 A. 1030 (1910), the Court allowed such an action to recover the value of shares of corporate stock; quoting Judge Cooley in *Daggett v. Davis*, 53 Mich. 35, 18 N.W. 548, the Court held at 215, "We see no reason why, if the shares are converted by means of a wrongful use of the certificate, the owner in suing may not count upon the conversion of either." *See also Kalb v. Vega, supra*, 56 Md.App. 653, 468 A.2d 676, involving the conversion of stock, and *Durst v. Durst*, 225 Md. 175, 180, 169 A.2d 755 (1961), holding a life insurance policy to be a chose in action which "may be the subject of a conversion."

Notwithstanding this expansion, there do remain some limits to the tort. The initial focus continues to be on the tangible item withheld. In *Maryland Casualty Co. v. Wolff*, 180 Md. 513, 25 A.2d 665 (1942), for example, the defendant had innocently cashed or endorsed certain checks made payable to him by a dishonest employee of the plaintiff. In rejecting the plaintiff's attempt to recover the proceeds of those checks through an action in trover, the Court held, at 515, 25 A.2d 665:

> "Conversion of a check as a chattel, a tort, is, of course, the subject of the suit. The money represented by it is not the direct subject, as trover does not lie to recover money converted; it lies to recover damages for the tort. See authorities collected in *Davin v. Dowling*, 146 Wash. 137, 140, 262 P. 123."

If this statement from *Wolff* is a bit cryptic,[1] the holdings in *Davin v. Dowling* and the cases cited in it are not. The point made there, as expressed in *Shrimpton & Sons v. Culver*, 109 Mich. 577, 67 N.W. 907 (1896), cited in *Davin*, 262 P. at 125, is that, while an action of trover will lie to recover money, i.e., currency, as money is a chattel, the action "is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money entrusted to his care." *See also Larson v. Dawson*, 24 R.I. 317, 53 A. 93 (1902), also cited in *Davin*.

That principle remains current. In *Lyxell v. Vautrin*, 604 F.2d 18, 21 (5th Cir.1979), applying Alabama law, the Court held: "When there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor."

*See also United States Fidelity and Guaranty Co. v. Bass*, 619 F.2d 1057 (5th Cir.1980), also applying Alabama law; *Jensen v. State Bank of Allison*, 518 F.2d 1 (8th Cir.1975), applying Iowa law; *Dawkins v. National Liberty Life Ins. Co.*, 263 F.Supp. 119 (D.S.C.1967), applying South Carolina law; *Autoville, Inc. v. Friedman*, 20 Ariz.App. 89, 510 P.2d 400 (1973); *Belford Trucking Co. v. Zagar*, 243 So.2d 646 (Fla.App.1970); *Warm Springs Properties, Inc. v. Andora Villa, Inc.*, 96 Idaho 270, 526 P.2d 1106 (1974); *Free v. Elberson*, 157 Mont. 424, 486 P.2d 857 (1971); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 A.D.2d 549, 408 N.Y.S.2d 951 (1978); *Owens v. Andrews Bank & Trust Co.*, 265 S.C. 490, 220 S.E.2d 116 (1975); *Houston Nat. Bank v. Biber*, 613 S.W.2d 771 (Tex.Civ.App.1981); *First Nat. Bank of Bellaire v. Hubbs*, 566 S.W.2d 375 (Tex.Civ.App.1978); Annot., *Nature of property or rights other than tangible*

---

1. The ultimate holding in *Wolff* was that the defendant, though innocently assisting the employee in defrauding the plaintiff, had not actually interfered with the plaintiff's right to possess the checks. The plaintiff was the drawer of the checks, not the payee. The significance of that fact necessarily flowed, however, from the Court's view that only the checks themselves, and not merely their proceeds, could be the subject of conversion.

*chattels which may be subject of conversion,* 44 A.L.R.2d 927, 942–43 (1955); Restatement (Second) of Torts § 242, comment f.

That is precisely the situation here. Commonwealth sent Lawson a check for $11,357 on April 11, 1979. That check should have been for $3,966 less. Lawson deposited the check, and, in due course, it was returned to Commonwealth. Lawson no longer has the check; he did not have it when suit was filed; nor does he have any specific, identifiable proceeds from the check. This action, then, is nothing more or less than to recover a debt, and, as the above-cited authority makes clear, trover is not available for that purpose.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.

### ON MOTION FOR RECONSIDERATION

After the filing of the Court's Opinion, appellee moved for reconsideration, contending that the Court's decision "ignores a number of reported decisions out of this state which clearly recognizes [*sic*] the applicability of the tort of conversion for the return of monies." The cases it claims we ignored are *Siegman v. Equitable Trust Co.,* 267 Md. 309, 297 A.2d 758 (1972); *Food Fair Stores v. Greeley,* 264 Md. 105, 285 A.2d 632 (1972); *Food Fair Stores v. Hevey,* 275 Md. 50 (1975); and *Bender v. Bender,* 57 Md.App. 593, 471 A.2d 335 (1984). It neglects to mention, of course, that not one of those cases was cited in its brief or referred to in oral argument.

We have indeed considered those cases, now that they belatedly have been brought to our attention, but find them inapposite. *Bender* involved the taking of cash from a safe. The *Food Fair* cases involved the transfer of assets from what appeared to be a specific account for the plaintiff set up under a pension plan to other plan participants. *Siegman* involved the wrongful seizure of the entire proceeds of the plaintiff's bank account by the depository bank. In each case, there were either specific assets or the proceeds of a specific account that were wrongfully taken. That is simply not the case here. The motion is denied.