731 A.2d 957

**ALLIED INVESTMENT CORPORATION and Allied Venture Partnership**

v.

**Peter O. JASEN.**

**No. 134, Sept. Term, 1998.**

Court of Appeals of Maryland.

June 25, 1999.

548

John F. Kaufman (Richard M. Kremen, Piper & Marbury, L.L.P., on brief), Baltimore, for Petitioners.

No argument on behalf of Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and THEODORE G. BLOOM (retired, specially assigned), JJ.

CATHELL, Judge.

Allied Investment Corporation and Allied Venture Partnership, petitioners, appeal from the decision of the Circuit Court for Montgomery County dismissing, under Maryland Rule 2–322, their complaint against Peter O. Jasen, respondent, for declaratory judgment and an equitable accounting.

Although the facts are somewhat torturous, the business transactions at issue here, stripped of their factual complexity, are relatively simple. A guarantor of loans pledged to the lenders, petitioners, as collateral, all of his interests in a limited partnership and shares in a corporation, including the right to the proceeds from both. Security interests were documented by way of promissory notes and collateral assignments. The original borrower was replaced by a successor, but the guarantee remained and, despite certain modifications, the obligation of the guarantor remained essentially the same.

While the partnership and corporate interests remained as collateral for the loans, the guarantor sold, or purportedly sold, the same interests to respondent. Respondent then

notified petitioners that the assignment of collateral to them was null and void. The lenders replied to respondent that their collateral interests were valid.

Petitioners filed suit against respondent requesting a declaratory judgment that (1) the collateral assignment to them of the partnership interest, including the proceeds, was valid, and (2) the collateral assignment of the shares of corporate stock to them was valid. Petitioners filed in the same suit a third count for an equitable accounting.

The trial court did not address any of petitioners' claims, finding that the suit was, in effect, an action for conversion and that the statute of limitations had expired with respect to such an action. The Court of Special Appeals affirmed. We shall reverse.

## I. Facts

William H. Miller, acting as President of NNS Corporation, borrowed $1,000,000 from petitioners and DC Bancorp, on May 30, 1989. Mr. Miller guaranteed payment of the loan personally, providing collateral in part through a security interest in his limited partnership share in the Ashmere Chesapeake Limited Partnership (Ashmere Partnership), his fifty percent stock ownership of Ashmere Chesapeake Corporation (Ashmere Corporation), and the proceeds emanating from both. Petitioners and DC Bancorp subsequently purchased other previously-made loan obligations of NNS Corporation from other lenders not relevant to this proceeding. Payment of those loans also had been guaranteed personally by Mr. Miller.

NNS Corporation later sold its assets to another firm, after which petitioners and DC Bancorp entered into a Modification of Loans Agreement on February 20, 1991. Mr. Miller again guaranteed the modified loans personally with, among other things, his interests in the Ashmere Partnership and the Ashmere Corporation (hereinafter collectively referred to as the Ashmere Interests) and the proceeds from those interests. Mr. Miller also entered into a promissory note with petitioners

and DC Bancorp, which provided a security interest in "all of [his] assets, funds, property and other rights owned." DC Bancorp later assigned all of its interests in these loan transactions to petitioners.

In an agreement dated March 20, 1991, Mr. Miller purported to sell his portion of the Ashmere Interests to respondent, a limited partner in the Ashmere Partnership and a holder of Ashmere Corporation stock. Petitioners allege that respondent "had knowledge of Miller's prior execution of the Collateral Assignment" of his share of the Ashmere Interests and their proceeds. Respondent sent a letter to petitioners on March 25, 1991, stating that Mr. Miller's assignment of Miller's portion of the Ashmere Interests as collateral was "null and void." Petitioners responded by a letter dated March 27, 1991, that the collateral assignment was valid. The parties exchanged further letters without resolution of the matter.

Petitioners filed a complaint in the Circuit Court for Montgomery County on January 28, 1997. The first count in the complaint requested the court to enter a declaratory judgment that Mr. Miller had validly pledged as secured collateral his share of the Ashmere Partnership and the proceeds resulting from that interest. The second claim requested a declaratory judgment that petitioner had a secured interest in Mr. Miller's shares of the Ashmere Corporation along with all distributions, dividends, and proceeds arising from that ownership. The third count requested an equitable accounting of the proceeds, distributions, and dividends of the Ashmere Interests, if any, received by respondent after March 1, 1991.

Respondent moved to dismiss the complaint for failure to state a claim pursuant to Maryland Rule 2–322. Respondent argued that counts one and two of the complaint were actually a tort claim for conversion and therefore subject to the general three-year statute of limitations.[1] *See* Md.Code (1974,

---

1. The Court of Special Appeals has noted:

 Where the limitations defense is apparent from the face of the complaint, it has been held subsumed within the broader defense that the complaint fails to state a cause of action upon which relief can be

1998 Repl.Vol.), § 5–101 of the Courts & Judicial Proceedings Article. The circuit court agreed and dismissed counts one and two with prejudice. The circuit court also dismissed count three because the dismissal of counts one and two left "no basis" for an equitable accounting.

On appeal, the Court of Special Appeals affirmed, holding that Mr. Miller's assignment of his Ashmere Interests to respondent amounted to a claim for conversion that was time-barred by the statute of limitations. *Allied Inv. Corp. v. Jasen*, 123 Md.App. 88, 99–100, 716 A.2d 1085, 1090 (1998). That court also held that count three was properly dismissed because the statute of limitations had "extinguished the under-lying rights the equitable remedy of accounting" pertained to and because the doctrine of laches applied. *Id.* at 110–11, 716 A.2d at 1095–96. We granted a writ of certiorari to address the following issues presented by petitioners:

1. Whether Maryland law recognizes a claim for conversion of an intangible limited partnership interest which is not merged into or identified with some tangible document of title, but with respect to which any dividends, profits or other distributions which *may* have issued have been received and retained by the defendant[.]

2. Whether Maryland law recognizes a claim for conversion of corporate stock represented by a certificate which remains in the plaintiff's possession, but with respect to which any dividends, profits or other distributions which *may* have issued have been received and retained by the defendant[.]

---

granted, and it therefore may be raised under the aegis of that defense in a motion to dismiss under Md. Rule 2–322(b). But the raising of that broader defense through a motion to dismiss is permissive rather than mandatory.
*Suburban Hosp., Inc. v. Dwiggins*, 83 Md.App. 97, 120–21, 573 A.2d 835, 847 (1990), *rev'd on other grounds*, 324 Md. 294, 596 A.2d 1069 (1991); *see also G & H Clearing & Landscaping v. Whitworth*, 66 Md.App. 348, 354, 503 A.2d 1379, 1382 (1986) (citing *Antigua Condominium Ass'n v. Melba Investors Atlantic, Inc.*, 65 Md.App. 726, 501 A.2d 1359 (1986)).

3. Whether an assertion of a claim to an intangible asset, with no accompanying assertion of dominion or control over any tangible object or document into which the intangible asset is merged or identified, gives rise to a claim for conversion under Maryland law[.]

## II. Dismissal

### A. Standard of Review

 In reviewing a motion to dismiss for failure to state a claim under Maryland Rule 2–322(b)(2), trial and appellate courts must assume the truth of all well-pleaded, relevant, and material facts in the complaint and any reasonable inferences that can be drawn therefrom. *Bobo v. State*, 346 Md. 706, 708, 697 A.2d 1371, 1372 (1997) (citing *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 333, 624 A.2d 496, 498 (1993); *Odyniec v. Schneider*, 322 Md. 520, 525, 588 A.2d 786, 788 (1991)); *Board of Educ. v. Browning*, 333 Md. 281, 286, 635 A.2d 373, 376 (1994) (citing *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327, 331 (1993)). "Dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *Bobo*, 346 Md. at 709, 697 A.2d at 1373 (citing *Morris v. Osmose Wood Preserving*, 340 Md. 519, 531, 667 A.2d 624, 630 (1995)). Thus, an appellate court reviewing a dismissal must determine whether the trial court was legally correct. *Id.*

### B. Dismissal of Declaratory Judgment Actions

 Section 3–406 of the Courts & Judicial Proceedings Article provides:

> Any person interested under a ... written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or other legal relations under it.

Section 3–407 allows a contract to "be construed before 'or after a breach of the contract." Granting a motion to dismiss a declaratory judgment action without declaring the rights of the parties rarely is appropriate. *Post v. Bregman,* 349 Md. 142, 160, 707 A.2d 806, 814 (1998); *Broadwater v. State,* 303 Md. 461, 465, 494 A.2d 934, 936 (1985); *State v. Burning Tree Club, Inc.,* 301 Md. 9, 17–18, 481 A.2d 785, 789 (1984); *Borders v. Board of Educ.,* 259 Md. 256, 258–59, 269 A.2d 570, 571 (1970); *Woodland Beach Property Owners' Ass'n v. Worley,* 253 Md. 442, 447–48, 252 A.2d 827, 830 (1969); *Hunt v. Montgomery County,* 248 Md. 403, 408–10, 237 A.2d 35, 37–39 (1968). "Ordinarily the only place a [dismissal] has in the declaratory process is to challenge the legal availability of the remedy sought to be used." *Hunt,* 248 Md. at 408, 237 A.2d at 37. This Court has said that

> [t]he test of the sufficiency of the [complaint for declaratory judgment] is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree.

*Shapiro v. Board of County Comm'rs,* 219 Md. 298, 302–03, 149 A.2d 396, 399 (1959).

■ As an example of when a claim for declaratory judgment would not be available, we have said that

> as a general rule, courts will not entertain a declaratory judgment action "if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated."

*Post,* 349 Md. at 160, 707 A.2d at 814 (quoting *Waicker v. Colbert,* 347 Md. 108, 113, 699 A.2d 426, 428 (1997)); *see also Turnpike Farm Ltd. Partnership v. Curran,* 316 Md. 47, 49, 557 A.2d 225, 226 (1989); *Northern Assurance Co. v. EDP Floors, Inc.,* 311 Md. 217, 223, 533 A.2d 682, 685 (1987). That

a separate claim exists upon which suit could be brought, however, ordinarily does not defeat a party's right to seek and obtain a declaratory judgment prior to filing the other claim. *See* § 3–409(c) of the Courts & Judicial Proceedings Article ("A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy. . . ."); *Post,* 349 Md. at 160, 707 A.2d at 814–15 ("The existence of another remedy, at law or in equity, does not ordinarily defeat a party's right to seek and obtain a declaratory judgment.") (citing *Turner v. Manufacturers' Cas. Ins. Co.,* 206 Md. 601, 112 A.2d 670 (1955); *Glorius v. Watkins,* 203 Md. 546, 102 A.2d 274 (1954)); *Gloyd v. Talbott,* 221 Md. 179, 183, 156 A.2d 665, 666 (1959) ("The existence of a remedy at law or in equity is not a bar to declaratory relief.").[2]

The Court of Special Appeals held below that the trial court properly dismissed Allied's declaratory judgment action because . . . it is not "an available or appropriate type of remedy." Although couched in terms of declaring the "validity and priority" of Allied's interest in the Ashmere Partnership and Corporation, Allied's complaint is, in effect, one for conversion. . . . Allied apparently did not merely want the court to construe the "validity and priority" of its claim, but instead wanted its property back. Allied wanted the court to order Jasen to disgorge the distribu-

---

2. We explained the history behind this rule in *Schultz v. Kaplan,* 189 Md. 402, 407, 56 A.2d 17, 19 (1947):

> The Uniform Declaratory Judgments Act was first adopted in this state by Chapter 294 of the Acts of 1939, codified as Article 31A in the 1939 Code. This Court after the adoption of that Act held that where there exists an immediate cause of action between the parties for which one of the common remedies of law or equity is adequate and available, a proceeding for a declaratory judgment is not appropriate within the contemplation of that Act. *Caroline Street Permanent Building Association No. 1 v. Sohn,* 178 Md. 434, 13 A.2d 616; *Morgan v. Dietrich,* 179 Md. 199, 16 A.2d 916; *Brown v. Trustees of M.E. Church,* 181 Md. 80, 85, 28 A.2d 582. The purpose and intent of Chapter 724 of the Acts of 1945 was to make the Uniform Declaratory Judgments Act concurrent with existing remedies and to declare that the existence of another adequate remedy at law or in equity should not preclude a judgment for declaratory relief in cases in which it was appropriate. *Ryan v. Herbert,* 186 Md. 453, 47 A.2d 360.

tions, dividends, and other payments he may have received over the past six years, all of which assertedly were Allied's property upon Miller's default. Such goals are inconsistent with the purpose of the Declaratory Judgment Act, but entirely consistent with a claim for conversion.

*Allied Inv. Corp.*, 123 Md.App. at 99–100, 716 A.2d at 1090 (footnote omitted) (quotation omitted). We disagree. Counts one and two of the complaint seek a declaration that petitioners have a valid security interest in the Ashmere Interests and their proceeds. Count one, in its request for relief, seeks a declaratory judgment:

a. Declaring that William H. Miller's execution of the Collateral Assignment of Ashmere Manor Interests in his capacity as president of Ashmere Chesapeake Corporation was effective to confer the consent of Ashmere Chesapeake Corporation, the general partner of Ashmere Chesapeake Limited Partnership, to William H. Miller's pledge of his partnership interest in Ashmere Chesapeake Limited Partnership, and the proceeds thereof, in favor of Allied Investment Corporation, Allied Venture Partnership and DC Bancorp Venture Capital Company;

b. Declaring that pursuant to the May 30, 1989 Collateral Assignment of Ashmere Manor Interests, William H. Miller's obligations to Allied Investment Corporation and Allied Venture Partnership under the Modification of Loans Agreement of February 20, 1991, and the accompanying Guaranty and Promissory Note from William H. Miller, are secured by a security interest in William H. Miller's partnership interest in Ashmere Chesapeake Limited Partnership, together with all rights of William H. Miller to distributions, dividends, or other payments arising from William H. Miller's partnership interest in Ashmere Chesapeake Limited Partnership; and

c. Granting such other and further relief as this Court deems just and appropriate.

Count two seeks a declaratory judgment:

a. Declaring that William H. Miller's obligations to Allied Investment Corporation and Allied Venture Partnership

pursuant to the Modification of Loans Agreement of February 20, 1991, and the accompanying Guaranty and Promissory Note from William H. Miller, are secured by a security interest in William H. Miller's stock in Ashmere Chesapeake Corporation, together with all rights of William H. Miller to distributions, dividends or other payments arising from William H. Miller's stock in Ashmere Chesapeake Corporation; and

b. Granting such other and further relief as this Court deems just and appropriate.

Nowhere in the language of these two claims do petitioners seek reimbursement for any property rights or proceeds that respondent may have received after his purported purchase of the Ashmere Interests. Nor do the two claims allege a conversion of those interests. Thus, petitioners' complaint cannot be dismissed for stating a time-barred conversion claim because, quite simply, their complaint does not state a claim for conversion. Petitioners' "legal relations are affected by a ... contract" and section 3–406 of the Courts & Judicial Proceedings Article authorizes them to "have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or other legal relations under it" by the circuit court. Thus, claims one and two are strictly requests for declaratory judgment.

We note further that even if petitioners could allege a conversion, the potential existence of a conversion claim does not bar them from filing an action for declaratory judgment. As section 3–409(c) of the Courts & Judicial Proceedings Article and *Post,* 349 Md. at 160, 707 A.2d at 814–15, make clear, the availability of a concurrent legal or equitable remedy ordinarily does not prevent a party from seeking and obtaining a declaratory judgment. Regardless of whether the circumstances in this case *could* constitute a conversion claim, time-barred or not, petitioners have never made a claim and their complaint does not set forth such a claim now. Thus, they may seek a declaratory judgment pertaining to whether they have a secured interest in the Ashmere Interests. The

lower courts incorrectly viewed petitioners' claims for declaratory judgment as solely a tort claim for conversion.

## III. Conversion

▉▉▉▉ Despite the availability of concurrent remedies, the well-pleaded facts of petitioners' complaint could not state a claim for conversion in any event. Thus, petitioners' request for declaratory judgment is not barred by the statute of limitations, as the lower courts have determined, by equating it to a conversion claim. "A 'conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Interstate Ins. Co. v. Logan,* 205 Md. 583, 588–89, 109 A.2d 904, 907 (1954) (citing *Martin v. W.W. Lanahan & Co.,* 133 Md. 525, 105 A. 777 (1919); *Merchants' Nat'l Bank v. Williams,* 110 Md. 334, 72 A. 1114 (1909)). The original common law rule was that a claim for conversion could not be sought unless the plaintiff's property was tangible. That rule has been modified over time and certain intangible property interests may now be recovered through a conversion claim. As explained in W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 15, at 91–92 (5th ed.1984):

> Intangible rights of all kinds could not be lost or found, and the original rule was that there could be no conversion of such property. But this hoary limitation has been discarded to some extent by all of the courts. The first relaxation of the rule was with respect to the conversion of a document in which intangible rights were merged, so that the one became the symbol of the other—as in the case of a ... stock certificate. This was then extended to include intangible rights to which a tangible object, converted by the defendant, was highly important.... In all of these cases the conversion of the tangible thing was held to include conversion of the intangible rights, and to carry damages for it. The final step was to find conversion of the rights themselves where there was no accompanying conversion of anything tangible....

The process of expansion has stopped with the kind of intangible rights which are customarily merged in, or identified with some document. [Footnotes omitted].

Section 242 of the Restatement (Second) of Torts (1965) recognizes this development in the law of conversion:

§ 242. Conversion of Documents and Intangible Rights

(1) Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.

(2) One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document is not itself converted.

Comment e to section 242, which was quoted by the Court of Special Appeals below, states:

It was first held that the conversion of a document in which intangible rights were merged permitted recovery of damages for the appropriation of the rights so identified with it, as stated in Subsection (1). Then ... it came to be recognized by a number of courts that the recovery was for the interference with the intangible rights themselves, and that the conversion of the document was merely the means by which this was accomplished. The final step, which a good many courts have taken, was the recognition that there may be "conversion" of such an intangible right, of a kind customarily identified with and merged in a document, even though the document is not itself converted.

The intermediate appellate court, however, neglected to quote the next portion of comment e, which states that the so-called "final step" in the law of conversion

does not accord very well with the traditional common law limitations of conversion; and courts which prefer to adhere to the older theory may prefer to regard the liability as one for an intentional interference with the right, which is not identical with conversion, but is similar to it in its nature and legal consequences.

Comment f to section 242 states that "[t]hus far the liability stated in Subsection (2) has not been extended beyond the kind of intangible rights which are customarily represented by and merged in a document." Keeton, *supra*, § 15, at 92, also notes that tort liability should not be expanded beyond intangible property rights incorporated into a document:

> The American economy has experienced an increasing use of intangible ideas. It has been urged that conversion should expand to redress interference with all properties— tangible or intangible. But it would seem preferable to fashion other remedies, such as unfair competition, to protect people from having intangible values used and appropriated in unfair ways. [Footnote omitted.]

■ We agree that the tort of conversion generally may extend to the type of intangible property rights that are merged or incorporated into a transferable document. We refuse, however, to extend the tort further, to cover completely intangible rights or as section 242(2) of the Restatement contemplates, to situations in which the relevant document itself has not been transferred. Thus, for petitioners' complaint to state a claim for conversion of the Ashmere Interests, it must have contained facts alleging that tangible documents evidenced those property interests and that the documents were transferred improperly to respondent.

## A. Conversion of the Ashmere Partnership Interests

The Supreme Court of Rhode Island has stated that "a conversion action will not lie for a partnership interest or other intangible property right that is not manifested by a tangible instrument, such as a written agreement ... that may, in turn, be converted." *Montecalvo v. Mandarelli*, 682 A.2d 918, 929 (R.I.1996). Noting *Montecalvo*, the Court of Special Appeals held below that Mr. Miller's share of the Ashmere Partnership was merged into both the certificate of limited partnership filed with the Commonwealth of Massachusetts and the written partnership agreement. *Allied Inv.*

*Corp.,* 123 Md.App. at 105, 716 A.2d at 1093. We shall not address this issue.[3]

 Petitioners' complaint did not contain sufficient facts that could have stated a claim for conversion of Mr. Miller's share of the Ashmere Partnership even if the Court of Special Appeals's holdings as to the law in respect to the nature of partnership agreements and certificates were correct. Maryland law does not recognize a tort claim for conversion of intangible property interests unless they are merged into a tangible document over which the defendant exercises some form of ownership or dominion. Petitioners' complaint did not allege any facts indicating that respondent exercised ownership or dominion over any document pertaining to Mr. Miller's interest in the Ashmere Partnership.

## B. Conversion of the Ashmere Corporate Shares

 Stock certificates are one example of documents into which intangible property rights, corporate shares, typically merge. Thus, an improper exercise of ownership or dominion over shares of a corporation is subject to a conversion claim. *Shipley v. Meadowbrook Club, Inc.,* 211 Md. 142, 150, 126 A.2d 288, 292 (1956); *Jones v. Ortel,* 114 Md. 205, 214–15, 78 A. 1030, 1033 (1910); Restatement (Second) of Torts § 242 cmt. b; Keeton, *supra,* § 15, at 91. Neither petitioners nor respondent, however, have alleged that respondent exercised dominion over the Ashmere Corporation stock certificates. As stated, *supra,* we do not recognize a claim for the conversion of intangible property rights merged into a document when the defendant has not exercised ownership or dominion over that document.

We note that in *United Leasing Corp. v. Thrift Ins. Corp.,* 247 Va. 299, 440 S.E.2d 902 (1994), and *Southern Cellular Telecom, Inc. v. Banks,* 208 Ga.App. 286, 431 S.E.2d 115 (1993), neither plaintiff ever received control over tangible,

---

**3.** Our decision not to address this issue does not indicate that we are in agreement with the Court of Special Appeals.

valid stock certificates representing the intangible corporate shares in which they claimed an interest. Thus, neither plaintiff could sue for tortious conversion of those shares. Also adopting this analysis is *Beck v. American Sharecom, Inc.,* 514 N.W.2d 584 (Minn.Ct.App.1994). The plaintiff in *Beck* sued for conversion of the shares of stock he never received under his employment contract. Noting that the plaintiff "was not given possession of any of [the] shares" and "there was no transfer or delivery of shares" to the plaintiff, the Minnesota Court of Appeals held that the conversion claim should not have gone to the jury. *Id.* at 589. In the case *sub judice,* none of the pleaded facts allege that any tangible documents in this case have passed into the control of respondent. Thus, based on the allegations of the complaint, a conversion was not alleged and no facts before the trial court sufficed for it to find that the claims were for conversion.

### C. Conversion of the Ashmere Interests' Proceeds

The general rule is that monies are intangible and, therefore, not subject to a claim for conversion. *See Lawson v. Commonwealth Land Title Ins. Co.,* 69 Md.App. 476, 482, 518 A.2d 174, 177 (1986); *see also Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 732 F.2d 859, 862 (11th Cir. 1984) (interpreting Alabama law); *Pioneer Commercial Funding Corp. v. United Airlines, Inc.,* 122 B.R. 871, 885 (S.D.N.Y. 1991) (interpreting New York law); *Warm Springs Properties, Inc. v. Andora Villa, Inc.,* 96 Idaho 270, 272, 526 P.2d 1106, 1108 (1974); *Sandy Creek Condominium Ass'n .v. Stolt & Egner, Inc.,* 267 Ill.App.3d 291, 294, 204 Ill.Dec. 709, 642 N.E.2d 171, 174–75 (1994); *Reason v. Payne,* 793 S.W.2d 471, 474 (Mo.Ct.App.1990). An exception exists, however, when a plaintiff can allege that the defendant converted specific segregated or identifiable funds. *See Lawson,* 69 Md.App. at 482, 518 A.2d at 177; *see also Mitchell Energy Corp. v. Samson Resources Co.,* 80 F.3d 976, 984 (5th Cir.1996) (interpreting Texas law); *Limbaugh,* 732 F.2d at 862; *NPF IV, Inc. v. Transitional Health Servs.,* 922 F.Supp. 77, 81 (S.D.Ohio 1996) (interpreting Ohio law); *Pioneer Commercial Funding,* 122

B.R. at 885; *Johnson v. Life Ins. Co.,* 581 So.2d 438, 442–43 (Ala.1991); *Hudspeth v. A & H Constr., Inc.,* 230 Ga.App. 70, 71, 495 S.E.2d 322, 323 (1997); *Warm Springs Properties,* 96 Idaho at 272, 526 P.2d at 1108; *Sandy Creek Condominium,* 267 Ill.App.3d at 294, 204 Ill.Dec. 709, 642 N.E.2d at 174; *Reason,* 793 S.W.2d at 474–75; *Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 124, 559 N.Y.S.2d 704, 712 (1990), *appeal denied,* 77 N.Y.2d 803, 568 N.Y.S.2d 15, 569 N.E.2d 874 (1991); *DeChristofaro v. Machala,* 685 A.2d 258, 263 (R.I.1996); *SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 498, 392 S.E.2d 789, 792 (S.C.1990). This rule is well-synthesized in 1 Fowler V. Harper et al., *The Law of Torts,* § 2.13, at 2:56 (3d ed.1986), which notes that conversion claims generally are "recognized in connection with funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction." (Footnote omitted).[4]

In *Limbaugh,* 732 F.2d 859, the United States Court of Appeals for the Eleventh Circuit reviewed a suit for conversion against a broker who transferred money from a mutual fund account without the owner's consent. The court noted, in dicta, that the transferred money had to be "sufficiently identifiable," meaning the plaintiff must describe the funds "with such reasonable certainty that the jury may know what money is meant." *Id.* at 862 (quotation omitted). That the money was in the form of specific mutual fund shares made the funds "sufficiently identifiable" to be tortiously converted. In *Mitchell Energy,* 80 F.3d 976, Mitchell Energy sued for

---

**4.** We left open the question of "whether wages, or the right to receive wages, may be the subject of a claim of conversion" in *Keys v. Chrysler Credit Corp.,* 303 Md. 397, 414 n. 9, 494 A.2d 200, 209 n. 9 (1985), because the issue had not been raised by the parties. We allowed the conversion claim after the plaintiff's wages had been garnished improperly. Because we address that issue today, we note that such a claim would stand only if the amount garnished was readily identifiable and the transferred money had not been commingled with other funds. *See Lewis v. Fowler,* 479 So.2d 725, 726–27 (Ala.1985) (holding that an employee could not sue for conversion of wages after garnishment because no specific monies could be identified in the transaction and the money was not placed into any "special account.").

conversion of gas royalties it believed that Samson Resources owed them under a lease. The court stated:

> Although Mitchell does have a right to a percentage of the profits of production, this does not give Mitchell a right to a specific and identifiable portion of the proceeds received that could be considered [a] specific chattel. Rather, Mitchell's right is to an amount equal to its proportionate share of the *value* of gas produced.... [T]he obligation owed to Mitchell ... is more analogous to an obligation to pay money generally than to return or deliver money as specific chattel.

*Id.* at 984. The court held that "Mitchell has no action in conversion against its cotenant, Samson, to recover its share of profits in the mineral estate." *Id.* The Court of Special Appeals has noted that, if a defendant maintains possession of the proceeds in question, but commingles it with other monies, the cash loses its specific identity. *See Lawson*, 69 Md.App. at 482–83, 518 A.2d at 177 (holding that the plaintiff could not sue for conversion to recover an overpayment on a check received by the defendant and deposited into his personal bank account); *see also Warm Springs Properties*, 96 Idaho at 272, 526 P.2d at 1108 (noting that a conversion claim failed because the defendant placed the funds in its general checking account).

Applying these principles to the case *sub judice*, petitioners, if secured creditors in the Ashmere Interests, also were entitled to the proceeds of those interests after a default. Those proceeds, however, were not readily identifiable. The facts do not allege that respondent received any identifiable dollar amount of profits, assets, distributions, dividends, or other monetary reward from his purported ownership of the Ashmere Interests. Further, even if respondent did receive such monies from the Ashmere Partnership, Ashmere Corporation, or Mr. Miller, neither party alleges those monies were maintained in a separate, segregated account by respondent. Thus, any proceeds respondent may have retained from the Ashmere Interests are not specifically identifiable enough to be the subject of a conversion claim. In fact, petitioners'

inability to identify any proceeds from the Ashmere Interests is what may have led them to file the accounting claim.

## IV. Statute of Limitations for Declaratory Judgment Actions Generally

The Court of Special Appeals also held that "[e]ven if [petitioners'] conversion claims were properly brought as declaratory judgment claims, the statute of limitations nevertheless bars the action." *Allied Inv. Corp.,* 123 Md.App. at 108, 716 A.2d at 1094. The court, citing *Commercial Union Ins. Co. v. Porter Hayden Co.,* 116 Md.App. 605, 659, 698 A.2d 1167, 1192–93, *cert. denied,* 348 Md. 205, 703 A.2d 147 (1997), noted that when a claim for declaratory judgment is based upon the breach of an underlying obligation that triggers legal or equitable liability, the statute of limitations for the declaratory relief claim is the same as the statute of limitations for the legal or equitable remedy. *Allied Inv. Corp,* 123 Md.App. at 108–09, 716 A.2d at 1094–95. The Court of Special Appeals recognized in *Commercial Union,* 116 Md.App. at 657–58, 698 A.2d at 1192, however, that declaratory relief may be sought prior to a breach. *See* § 3–407 of the Courts & Judicial Proceedings Article. When a declaratory judgment is sought prior to a breach, the *Commercial Union* court reasoned, the statute of limitations does not apply at all. *Id.* at 659, 698 A.2d at 1193 (quoting *Maguire v. Hibernia Sav. & Loan Soc'y,* 23 Cal.2d 719, 146 P.2d 673, 681 (1944)).

We neither accept nor disagree with the portion of *Commercial Union* discussing the statute of limitations as it pertains to a declaratory relief claim. Either way, the Court of Special Appeals was incorrect in this case when it held that "because the underlying cause of action in the instant case, namely conversion, is barred by the statute of limitations, [petitioners'] claim for declaratory relief based thereon is also barred." *Allied Inv. Corp.,* 123 Md.App. at 109, 716 A.2d at 1095. For all the reasons stated, *supra,* petitioners have not alleged in their pleading any act that could constitute a cause of action for conversion. Thus, the claims in counts one and two for declaratory relief are not barred by the statute of

limitations applicable to conversion because they are not con-
version claims *or* declaratory judgment claims based on under-
lying facts alleging a conversion.

## V. The Accounting Claim

 The Court of Special Appeals held below that petition-
ers' third count, a request for an equitable accounting of any
proceeds of the Ashmere Interests received by respondent,
was properly dismissed because "[t]he statute of limitations
ha[d] extinguished the underlying rights the equitable remedy
of accounting seeks to safeguard." *Id.* at 110, 716 A.2d at
1095. Thus, the court essentially agreed with the circuit court
that the dismissal of counts one and two left "no basis" for the
accounting claim. Based on this reasoning, our instruction to
the Court of Special Appeals to vacate the order of the trial
court as to the declaratory judgment claims requires us also to
instruct the intermediate appellate court to vacate the dismiss-
al of the accounting claim.[5]

 The Court of Special Appeals also held that the
third claim was subject to the doctrine of laches. That issue
was raised, and thus preserved, by respondent in both his
motion to the trial court and his brief before the intermediate
appellate court. Petitioners did not raise this issue in their
request for the writ of certiorari and, therefore, we lack
jurisdiction to review the matter. *See* Md. Rule 8–131(b).
Because the trial court did not rule on the matter of laches,
however, and appellate courts generally are restricted to
determining whether the *trial court's* grounds for granting the
motion to dismiss were legally correct, *see Bobo,* 346 Md. at
709, 697 A.2d at 1373, we shall instruct that the issue of laches,
if raised on remand, be heard and determined by the circuit
court.

---

5. At oral argument, petitioners acknowledged that, in respect to the
accounting claim, they would not be entitled to recover damages for the
period beyond three years prior to filing.

## VI. Conclusion

Counts one and two of petitioners' complaint, which seek a declaratory judgment that petitioners have a security interest in Mr. Miller's Ashmere Interests, do not state a claim for conversion and are not based on such a claim. Thus, counts one and two are not barred by the statute of limitations on those grounds. We instruct the Court of Special Appeals to vacate the order of the circuit court as it currently stands. The circuit court's order must also be vacated as to count three, the equitable accounting claim, because the reasoning of the trial court that the dismissal of counts one and two left "no basis" for count three is no longer valid.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**